**ATLANTA CASUALTY COMPANY,**
Respondent,

v.

**Frances STEPHENS, et al., Appellants.**

**Frances L. STEPHENS, Appellant,**

v.

**Ralph MONACO, Defendant
ad Litem, Respondent.**

**Nos. WD 44619, WD 44805.**

Missouri Court of Appeals,
Western District.

Feb. 11, 1992.

Donald P. Herron, Kansas City, for appellants.

David Roy Buchanan, Kansas City, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

FENNER, Presiding Judge.

Appellant, Frances L. Stephens, appeals from an order of the trial court granting summary judgment to respondent, Atlanta Casualty Company in a declaratory judgment action and from an order of dismissal in an underlying personal injury action. The two cases have been consolidated herein for purpose of appeal.

Frances Stephens was a passenger in a 1974 Ford pickup truck that was involved in a single vehicle accident on January 14, 1988. Frances Stephens brought suit for personal injuries which she received in the accident. Ronnie Campbell, the driver of the Ford pickup, was deceased at the time of Frances Stephens' suit and Ralph Mona-

co was named as defendant ad litem pursuant to § 537.021.1(2), RSMo 1986.[1] The petition alleged that the Ford pickup was insured by Atlanta Casualty Company under a policy of insurance held by Dale D. Card.

The record reflects that the Ford pickup in question here was purchased by Dale D. Card on December 22, 1987, and that the certificate of title to the truck was assigned to him on the same date. The record does not reflect that Dale Card had a specific policy of insurance covering the pickup. However, at all times relevant herein, Dale Card owned and retained for his personal use a 1971 AMC Gremlin that was insured by Atlanta Casualty Company.

In defending the personal injury action, Atlanta Casualty brought a declaratory judgment action against Frances Stephens. The declaratory judgment suit sought a determination of whether Atlanta Casualty's policy of insurance held by Dale Card provided coverage for Frances Stephens' injuries. Upon motion of Atlanta Casualty, the trial court granted summary judgment to Atlanta Casualty, finding that the policy held by Dale Card did not provide coverage. Atlanta Casualty then filed a motion to dismiss Frances Stephens' underlying action for personal injuries. The motion to dismiss was sustained upon the trial court's finding that Frances Stephens was collaterally estopped from relitigating the issue of whether liability insurance coverage existed under Atlanta's policy. Frances Stephens appeals from the summary judgment and dismissal.

Frances Stephens raises several points on appeal arguing that the order granting summary judgment against her in the declaratory judgment action was in error and that the trial court erred by dismissing her action for personal injuries.

■ In addressing summary judgments, an appellate court reviews the entire record in the light most favorable to the party

---

1. The purpose of § 537.021 in allowing appointment of a defendant ad litem, is to provide a named party for a deceased wrongdoer so that a plaintiff may be redressed for his injury by the so called "real defendant"—the liability insurer. *State ex rel. Kasmann v. Hamilton,* 731 S.W.2d 345, 347 (Mo.App.1987).

against whom summary judgment was entered. *Triggs v. Risinger*, 772 S.W.2d 381, 382 (Mo.App.1989). The trial court may enter summary judgment where the pleadings, depositions and admissions, together with the affidavits, if any, show that no genuine issue of material fact exists and that the law entitles the moving party to a favorable judgment. *Ronollo v. Jacobs*, 775 S.W.2d 121, 125 (Mo. banc 1989). However, when a motion for summary judgment is made and supported as provided under Rule 74.04, an adverse party may not rest on the mere allegations or denials of his pleading, or argue that he has evidence for trial that will disclose issues of fact, but his response by affidavit or otherwise, shall set forth specific facts showing that there is a genuine issue for trial. *Kroh Brothers Development Company v. State Line Eighty–Nine, Inc.*, 506 S.W.2d 4, 12 (Mo.App.1974).

■ As best as can be determined, Frances Stephens argues first that Atlanta Casualty is bound to insurance coverage, in relation to the accident herein, because the policy of insurance on the Gremlin automobile was not countersigned until January 14, 1988, the date of her accident. Appellant seems to be arguing that there was an oral agreement by Atlanta Casualty to provide insurance coverage to Dale Card prior to the countersigning of the policy, which oral agreement binds Atlanta Casualty to coverage for all vehicles owned by Dale Card.

The record reflects that a binding insurance policy on the Gremlin was issued on December 28, 1987, effective for December 28, 1987 through June 28, 1988. Appellant cites no provision within the policy that negates coverage until the policy is countersigned. The terms of the policy are as covered in the written agreement. There is nothing in the record to support appellant's position that there was an oral agreement which controls to provide coverage for all of Dale Card's vehicles.

Appellant's first point is denied.

In her second point, Frances Stephens argues that Ronnie Campbell, the driver of the Ford pickup, was an insured person as defined under the policy of insurance on Dale Card's Gremlin.

An insured person is defined under the relevant policy provision herein as follows:

(1) You or a relative, as defined by the policy.

(2) Any person using your insured car.

(3) Any other person or organization with respect only to legal liability for acts or omissions of

(a) any person covered under this Part while using your insured car; or

(b) you or any relative covered under this Part while using any car or utility trailer other than your insured car if the car or utility trailer is not owned or hired by that person or organization.

In regard to subsection (1) of the definition of insured person, a "relative" is defined in the policy as "a person living in your household related to you by blood, marriage or adoption...."

■ Dale Card was the only person listed in the declarations as the named insured. Ronnie Campbell was not related to Dale Card and did not live in his household. Ronnie Campbell was not an insured person under subsection (1).

In regard to subsection (2), "your insured car" is defined in the policy as:

(a) Any car described in the Declarations and any private passenger car or utility car you replace it with. If you wish Car Damage Coverage to apply to the replacing car you must notify us within 30 days of its acquisition.

(b) Any additional private passenger car or utility car of which you acquire ownership during the policy period. You must, however, notify us within 30 days of its acquisition.

(c) Any utility trailer you own.

(d) Any car or utility trailer not owned by you being temporarily used as a substitute for any other vehicle described in this definition because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction.

■ Subsection (2)(a) does not provide coverage because the record reflects that

the car described in the declarations was the Gremlin, not the pickup, and the pickup was not a replacement vehicle for the Gremlin. The record reflects that the pickup truck was purchased by Dale Card on December 22, 1987, which was prior to issuance of the policy covering the Gremlin. Up to the time of the accident, the pickup truck was in the possession and use of a John Spurlock, not Dale Card. Furthermore, the Gremlin remained in good operating condition at all relevant times.

Subsection (2)(b) does not provide coverage because ownership of a used vehicle is acquired at the time the certificate of title is assigned to the new owner. *Schultz v. Murphy*, 596 S.W.2d 51, 53 (Mo.App.1980). Title to the pickup was assigned on December 22, 1987, prior to the policy period.

Subsection (2)(c) does not provide coverage because a "utility trailer" is defined as "a vehicle designed to be towed by a private passenger car...." The pickup was not a utility trailer.

Subsection (2)(d) does not provide coverage because it is expressly limited to a car temporarily used as a substitute for a covered vehicle. Dale Card was not using the pickup as a substitute for the Gremlin.

■ In regard to subsection (3), Frances Stephens argues that if Dale Card negligently entrusted the pickup to Ronnie Campbell, the accident would be covered under Card's insurance policy. However, Dale Card was not a defendant in appellant's personal injury action and appellant's theory of negligent entrustment has never been asserted before the trial court. An issue is not preserved for appellate review when it is not presented to or decided by the trial court. *Rowe v. Norfolk & Western Railway Company*, 787 S.W.2d 751, 754 (Mo.App.1990).

Alternatively, Frances Stephens argues that the language of subsection (3)(b) is ambiguous and therefore, should be construed to allow coverage for the negligence of Ronnie Campbell. However, as evidenced by the discussion of the terms of subsections (1) and (2) above, Ronnie Campbell was not an insured person and the pickup was not an insured car. Subsection (3)(b) evidences no ambiguity as to whether the terms thereof provide coverage for the negligence of Ronnie Campbell.

In her third point on appeal, Frances Stephens argues that Atlanta Casualty was estopped to deny coverage because it undertook to defend the personal injury suit without a proper reservation of rights.

■ An insurance company can effect a proper reservation of rights when the company provides notice to an insured that its defense of an action should not be construed as a waiver of any policy defense and the insured accepts the defense of the action without protest and with full knowledge of the position of the insurance company of its right to assert non-liability. *Brooner & Assoc. v. Western Casualty and Surety Company*, 760 S.W.2d 445, 447 (Mo.App.1988). Such a reservation of rights puts the insured on notice that there may be a conflict between the insured's interests and those of the insurance company and that the insured may be exposed to personal liability not covered by insurance.

In the case at bar, Frances Stephens filed her action for personal injuries against Defendant Ad Litem Ralph Monaco pursuant to § 537.021, RSMo 1986. This statute allows for an action to be filed against a defendant ad litem when a person otherwise liable for damages for wrongdoing is deceased, but was insured against liability for damages. The defendant ad litem acts in the capacity of legal representative of the deceased wrongdoer. § 537.021.1(2), RSMo 1986. Any judgment against the defendant ad litem is binding on the insurer of the deceased wrongdoer to the same extent as if a personal representative had acted as the legal representative of the deceased wrongdoer. *Id.*

In an action against a defendant ad litem under § 537.021, the "real defendant" is the liability insurer. *State ex rel. Kasmann v. Hamilton*, 731 S.W.2d at 347. After the appointment of a defendant ad litem, any proceedings had or judgment rendered is binding on the liability insurer not the defendant ad litem. § 537.021.1(2). The defendant ad litem has no personal

liability on any judgment rendered. If the plaintiff desires to satisfy any portion of a judgment rendered out of the assets of the estate of a deceased wrongdoer, the action must be maintained against the personal representative of the deceased. *Id.*

■ In the case at bar, Atlanta Casualty notified the Estate of Ronnie Campbell that any defense of the Estate of Ronnie Campbell in any action arising out of the accident of January 14, 1988, would be under a reservation of rights under its policy. Frances Stephens argues that this was not a proper reservation of rights in her personal injury action because no notice of reservation of rights was given to the defendant ad litem. However, when an action is brought against a defendant ad litem under § 537.021, there can be no conflict of financial interests and no potential for personal liability on the part of the defendant ad litem. Therefore, it was not necessary for Atlanta Casualty to provide notice of a reservation of rights to the defendant ad litem to avoid waiver of the defense of non-liability.

Appellant's third point is denied.

In her fourth point, Frances Stephens argues that the trial court erred in granting summary judgment in the declaratory judgment action because there are genuine issues of material fact regarding the existence of insurance coverage. Frances Stephens argues that there were fact questions to be resolved as follows: whether there was an "oral binder" that extended coverage to the pickup; whether Dale Card acquired ownership of the pickup after December 28, 1987; whether the pickup was a replacement vehicle for the Gremlin; and whether Atlanta Casualty should be estopped from denying coverage because it failed to make a proper reservation of rights.

These alleged fact questions have all been discussed in this opinion. The record does not reflect genuine issues of material fact in regard to any of these matters.

Appellant's fourth point is denied.

In her fifth point, Frances Stephens argues that the trial court erred in granting summary judgment because Atlanta Casualty failed to serve Dale Card, an indispensable party.

■ A named insured is neither a necessary or indispensable party to a declaratory judgment proceeding where there is no denial of coverage to the insured. *State ex rel. Emcasco Insurance Company v. Rush,* 546 S.W.2d 188, 200 (Mo.App.1977). Frances Stephens made no claim against Dale Card and he was not a party to the underlying personal injury action. Atlanta Casualty had not denied coverage to its insured Dale Card.

Appellant's fifth point is denied.

In her sixth and final point, Frances Stephens argues that the trial court, in the personal injury action, abused its discretion by failing to stay the proceeding therein until appellate review of the declaratory judgment action was completed, rather than dismissing the personal injury action upon a finding of collateral estoppel.

■ Collateral estoppel is issue preclusion or the barring of relitigation of an issue by the same parties or those in privity with them. *City of Ste. Genevieve v. Ste. Genevieve Ready Mix, Inc.,* 765 S.W.2d 361, 364 (Mo.App.1989). The following four factors must be considered to determine whether collateral estoppel applies: 1) whether the issue presented in the prior adjudication was identical with the issue presented in the present action; 2) whether the prior adjudication resulted in a judgment on the merits; 3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and 4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. *Id.*

■ All four factors for the application of collateral estoppel are satisfied herein. First, in the cases consolidated in this appeal, the issue of whether Atlanta Casualty's policy with Dale Card provided coverage for the injuries of Frances Stephens was the same. In the personal injury action, the only opportunity for recovery was against Atlanta Casualty as a result of

its policy with Dale Card because the action was instituted under the defendant ad litem statute without the addition of any other parties. Second, for purposes of applying collateral estoppel, a summary judgment is a final adjudication on the merits even if that judgment is appealed. *Geringer v. Union Electric Company,* 731 S.W.2d 859, 866 (Mo.App.1987). Third and fourth, Frances Stephens was a party to both actions and she had a full and fair opportunity to litigate the issue of insurance coverage in the declaratory judgment action.

The trial court did not abuse its discretion by applying the doctrine of collateral estoppel to dismiss appellant's action for personal injuries.

The judgments in the cases consolidated herein are affirmed.

All concur.