JOHN L. THUSTON AND ASSOCIATES,
et al., Respondent.

First Nationwide Bank,
Intervenor/Respondent,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, Appellant.

No. WD 46973.

Missouri Court of Appeals,
Western District.

Nov. 9, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied
Feb. 22, 1994.

Michael G. Berry, Jefferson City, for appellant.

David L. Campbell, St. Louis, for respondents.

George A. Bartlett, Jefferson City, for intervenor/respondent.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

HANNA, Judge.

This case involves an appeal from an order by the trial court of Miller County, Missouri, entered on September 15, 1992, sustaining a summary judgment in favor of John L. Thuston and Associates, a limited partnership, and John L. and Ann Thuston (Thustons). The issue on appeal is the circuit court's subject matter jurisdiction to enter judgment in favor of the defendant, Federal Deposit

Insurance Corporation (FDIC) against the Thustons.

The trial court sustained Thustons' motion for summary judgment on their motion to vacate the judgment that had previously been entered in favor of FDIC. This ruling occurred over three years after the judgment was entered and after FDIC had executed upon the judgment. The trial court's ruling was premised on a lack of subject matter jurisdiction because it concluded the case was previously dismissed pursuant to Miller Countys Circuit Court Local Rule 8.2. We reverse.

On November 30, 1984, Thustons filed a two count petition against the Lake National Bank for damages arising from two loan transactions in the operation of a deposit account at the bank. Lake National Bank filed an answer and a two-count counterclaim based on the Thustons default on two promissory notes they executed on March 23 and July 6, 1983. The first note was in the principal amount of $169,500 and the second note had an original principal in the amount of $35,000. Both notes had an interest rate of 14% per annum.

FDIC's entry into the case was the result of Lake National Bank being declared insolvent on December 13, 1985, and FDIC's appointment to assume its assets and liabilities. The FDIC was substituted as a party-defendant January 16, 1986, and took over the banks defense and counterclaims.

On January 22, 1987, the clerk of Miller County Circuit Court made the following entry on the court's docket sheet: "Case placed on in-active docket per court rule # 8.2, attorneys notified." Local Court Rule 8.2 of the Circuit Court of Miller County states in part:

> The circuit clerks shall maintain two civil dockets for the cases filed with them: (1) ACTIVE and (2) INACTIVE. Upon filing, a case shall be included on the active docket. Cases not disposed of during two (2) years next following their filing shall, on the first day of the term of court next following expiration of said two (2) year period, be deleted from the active docket and placed on the inactive docket. Attorneys of record in cases placed on the inactive docket shall be notified by the circuit clerk of the transfer of cases to the inactive docket within thirty (30) days next following such transfer.

The local rule also provides that in the event a party does not request within one year that the case be reinstated to the active docket by court order, the case shall be dismissed for lack of prosecution, without prejudice and without further notice to any party. The rule provides that any such dismissal shall be by operation of the rule and effective immediately upon expiration of the year. Applications for reinstatement of cases to the active docket from the inactive docket will be granted only upon written motion showing good cause which has been ruled on favorably by the court.

On January 22, 1988, either the clerk or a deputy made the docket entry: "Case dismissed per Court Rule 8.2." Neither counsel nor the parties received notice from the clerk of this dismissal. A great deal of action on the case took place following this dismissal, including the entry of a judgment in favor of FDIC on its counterclaims. It is the dismissal order of January 22, 1988, that the Thustons maintain deprived the court of subject matter jurisdiction to take any further action.

Between the date that the case was removed to the "inactive docket," and the dismissal of the lawsuit on January 22, 1988, seven entries were made on the docket sheet. Two entries were made on March 18, 1987. One entry was FDIC's written request for a trial setting on a date certain, and the second entry was a notice to call up for hearing on April 16, 1987, at 9:00 a.m. regarding the disposition of FDIC's request for trial setting. The record does not indicate a hearing on that date. However, on August 13, 1987, the court ordered the case set for trial December 3, 1987, in Division 1 and the attorneys were notified of the setting.

 Before the trial date arrived the case was settled and, therefore, did not go to trial as scheduled. Later, difficulties with the settlement agreement arose between the parties, and on March 3, 1988, FDIC filed a motion to enforce the agreement alleging

that the Thustons had failed to perform their obligations under the agreement. On April 4, 1988, the Thustons entered their appearance to FDICs motion and their attorney wrote a letter to the judge as follows:

This is to advise that our clients, Mr. and Mrs. John L. Thuston and the partnership, John L. Thuston and Associates, did in fact settle this case in accordance with the terms of the settlement agreement presented to the Court in the FDICs Motion to Enforce Settlement, and do consent to the granting of the FDICs Motion to Enforce Settlement.[1]

On April 27, 1988, the circuit court sustained FDICs motion to enforce settlement and dismissed all claims of the Thustons against FDIC. Accordingly, on May 18, 1988, a judgment was entered by the trial court in FDICs favor pursuant to the settlement agreement on Count I of its counterclaim in the amount of $198,321 and on Count II of its counterclaim in the amount of $44,645.75, both at an interest rate of 14% per annum.

Unsuccessful attempts to collect the judgment were made, after which FDIC obtained an order of execution from the court, which was returned unsatisfied on August 26, 1988. A motion for revival of the judgment was filed by FDIC on October 23, 1990, with a notice of the motion of revival sent to the Thustons counsel. A hearing on the motion for revival was held and the motion was granted December 13, 1990.

FDIC filed a second request for execution on December 7, 1990, and plaintiffs were served with a Notice of the Levy, Notice of Exemption from Levy, and Notice of Sheriffs Sale on or about February 4, 1991. Pursuant to the notice, the sheriff of Camden County conducted an execution sale of real estate owned by the Thustons in Camden County on February 5, 1991. When the Thustons received notice that the sheriffs deed was to be acknowledged, they filed a motion to set

aside the execution, which included a prayer that FDICs judgment for money damages against them be set aside. On March 17, 1992, the Thustons filed a motion for summary judgment directed to their motion to set aside the execution. Before disposition of the motion, First Nationwide Bank intervened to support the Thustons motion to set aside FDICs judgment and execution.

A hearing on the motion for summary judgment was held September 15, 1992, and the court sustained the motion for summary judgment, setting aside FDICs judgment of May 18, 1988, and the execution, which included setting aside the February 5, 1991 sale.

FDIC filed its notice of appeal. Since filing its appeal, FDIC and First Nationwide Bank have settled their differences and the bank is no longer a party to this action.

■ All issues on appeal involve the interpretation and application of the law to the facts and, accordingly, the trial court's interpretation receives no deference in our review. *Bradley v. Mullenix*, 763 S.W.2d 272, 275 (Mo.App.1988). This court will reach its own conclusions about whether the trial court correctly interpreted and applied the law. *Id.* FDIC raises a number of issues, but we will consider only one as it is dispositive of this appeal. FDIC argues that the court order setting the case for trial removed the case from the inactive docket and reinstated it on the active docket. Therefore, the automatic dismissal of Rule 8.2 did not apply to the case. We agree and reverse.

The trial courts decision is premised upon a conclusion of law regarding its subject matter jurisdiction:

The docket entry of January 22, 1988 was a valid dismissal of all proceedings in this cause, including both the Petition and all Counterclaims, and this Court lost jurisdiction over this cause thirty days after the date of the entry of said January 22, 1988

---

1. Although we chose not to decide the case on this basis, the circuit court is a court of general jurisdiction and absent a showing that it was in excess of its subject matter jurisdiction, it will be presumed it proceeded in accordance with its jurisdiction. *Steinbaum v. Wallace*, 237 Mo.App.

841, 176 S.W.2d 683, 686 (1944). Conceding that a party cannot consent to jurisdiction, a party may admit the existence of facts which prove jurisdiction and a court may act judicially on such an admission. *Id.* at 688.

Order of Dismissal, which fact appears on the face of the record of the Court.

Local Rule 8.2 divides the Miller County cases into two dockets: active-those cases less than two years old; and inactive [2]— those cases generally three years of age and older. The rule is clear that a case cannot be on the both the active and inactive dockets at the same time. Whether a case is on one *docket or the other is strictly a function of* the age of the case dated from its filing. Apparently, according to the trial court's interpretation, the amount of activity that the case is undergoing does not control which docket it is on. A case transferred to the inactive docket at the two year point may continue to be the subject of discovery, settlement discussions, and other trial preparations, and still be considered on the inactive docket and dismissed at the end of one year unless reactivated.

This case was placed on the inactive docket on January 22, 1987, and during the period of time before its dismissal, the court ordered the case set for trial. Our decision is based on whether the order setting the case for trial effectively removed it from its inactive status. Simply put, may a lawsuit remain on an inactive docket and at the same time be scheduled for trial?

The plaintiffs argue that at no time did FDIC request that the case be removed from the inactive docket and there was no court order reinstating the case to the active trial docket; therefore, they argue, the case was effectively dismissed as of January 22, 1988. We disagree with this analysis. The case was removed from the inactive docket in one of two ways. The trial court may have considered FDICs motion for a trial setting as a motion to reactivate the case. This would be a reasonable interpretation of the court's action and is probably what occurred. Certainly, the motion was in writing as required by the rule and the setting of a case for disposition, in this case for trial, satisfies the local rules good cause requirement. Alternatively, the court could have removed the case on its own motion and set it for trial.

■ The trial court is vested with a broad discretion in controlling the docket and the progress of the litigation. *Mo–Kan Airport Passenger Serv., Inc. v. City of Kansas City,* 689 S.W.2d 641, 644 (Mo.App.1985). We are not prepared to say that the trial court does not have the authority to remove a case from the inactive docket on its own motion, or that such action was an abuse of its discretion, or was capricious. Also, we will not fault the court for interpreting FDIC's motion as one for removal of the case from the inactive docket. Irrespective of the manner that the case was set for trial, whether in response to FDIC's motion, or, by the court on its own motion, the case was given a trial setting for a date certain and lost its inactive status. The parties had every right to believe the case was returned to the active docket because a trial setting on a date certain is inconsistent with a case on the inactive docket. By reason of the courts action setting the case for trial on December 3, 1987, the parties had a right to rely on the fact that the case was now on the active trial docket. See *Dobbins v. Freeman,* 397 S.W.2d 734, 737 (Mo.App.1965). When a court sets a case for trial the attorneys and parties must expect that is what the court intended. *Id.* To hold otherwise would lead to a good deal of confusion to the bar and litigants—exactly what has occurred in this instance. Therefore, removal of the case from the inactive docket voided the Rule 8.2 action as memorialized by the clerks ministerial entry of dismissal.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

All concur.

---

**2.** More appropriately, this docket is a dismissal docket since dismissal seems to be the docket's sole purpose.