Thomas C. LITTON, Appellant,

v.

Joseph L. KORNBRUST, Respondent.

No. WD 60536.

Missouri Court of Appeals,
Western District.

Sept. 24, 2002.

Mark E. Parrish, Independence, MO, for appellant.

William S. Lewis, Trenton, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, THOMAS H. NEWTON, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Chief Judge.

On September 2, 1995, Appellant Thomas Litton was involved in a motor vehicle accident with Respondent Joseph Kornbrust near the driveway to Mr. Kornbrust's home at 123 Hauser Street in Marceline, Missouri. On September 21, 1999, Appellant filed a Petition for Damages against Mr. Kornbrust in the Circuit Court of Linn County alleging that Mr. Kornbrust had been negligent in the operation of his vehicle. Because Mr. Kornbrust was deceased, the trial court appointed a defendant *ad litem* pursuant to § 537.021.[1]

Jury trial on the matter commenced on August 14, 2001. On August 15, 2001, the jury returned its verdict finding Appellant one hundred percent at fault for the accident. On August 24, 2001, the trial court entered its judgment consistent with the jury's verdict and ordered Appellant to pay the costs of the proceeding, including $1,993.60 in deposition costs. Appellant brings two points on appeal from that judgment.

In his first point, Appellant claims:

THE TRIAL COURT ERRED IN ALLOWING COUNSEL FOR RESPONDENT TO CROSS EXAMINE APPELLANT WITH TESTIMONY FROM PRIOR UNRELATED LITIGATION BECAUSE IMPEACHMENT ON A COLLATERAL MATTER BY THE USE OF EXTRINSIC EVIDENCE IS REVERSIBLE ERROR, IN THAT THE CROSS EXAMINATION OF APPELLANT WITH PRIOR TESTIMONY FROM A CASE REGARDING THE SALE OF A BUSINESS, WHERE APPELLANT WAS NOT A PARTY, WAS IMPEACHMENT WITH EXTRINSIC EVIDENCE OF A COLLATERAL MATTER IN APPELLANT'S PERSONAL INJURY CASE, WHERE NO LOST INCOME WAS CLAIMED, AND APPELLANT WAS THEREBY PREJUDICED.

Appellant then contends that "[b]ecause the appellate review of the admission of extrinsic evidence for the impeachment of a collateral matter is an issue of law, the standard of review is de novo." Appellant relies on *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993), as support for this contention. Respondent concurs with this assessment of the standard of review in his own brief, adopting it word for word.

In so doing, both parties misstate our standard of review. Moreover, nothing in

1. All statutory references are to RSMo 2000 unless otherwise noted.

*ITT Commercial Finance Corporation* provides any support for the parties' purported standard of review. At the cited page, *ITT Commercial Finance Corporation* sets forth the standard of review on appeal where summary judgment has been granted. *Id.* at 376. There are no comments whatsoever in the opinion related to the scope of cross-examination or the admission of extrinsic evidence for the purposes of impeachment.

 . The proper standard of review is clearly set forth in the case law. " 'It is well established that the extent and scope of cross-examination in a civil action is within the discretion of the trial court and will not be disturbed unless an abuse of discretion is clearly shown.' " *Nelson v. Waxman,* 9 S.W.3d 601, 604 (Mo. banc 2000) (quoting *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 868–69 (Mo. banc 1993)). Likewise, "[t]he admissibility of evidence lies within the sound discretion of the trial court," *Id.,* including the introduction of evidence for the purposes of impeachment. *State v. Futo,* 932 S.W.2d 808, 819 (Mo.App. E.D.1996). The trial court will not be found to have abused its discretion unless its "ruling was clearly against the logic of the circumstances, and so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Brantley v. Sears Roebuck & Co.,* 959 S.W.2d 927, 929 (Mo.App. E.D.1998).

During cross-examination by Respondent's counsel, Appellant offered the following testimony:

Q: Your business, Precision Performance Products, I think, it's my understanding that you sold that; correct?

A: Yes.

Q: Why did you sell it?

A: My inability to work in that and some other factors involved, it was better for the client, the manufacturer and all parties involved to transfer that ownership.

Q: So you were stating that you weren't physically able to perform your duties related to that company because of this motor vehicle accident?

\* \* \*

A: That's correct.

Subsequently, Respondent sought to impeach this testimony by asking Appellant about prior statements Appellant had made under oath during the trial of a lawsuit filed by his wife. During that trial, Appellant testified that the reason the business had been sold was because of his wife's inability to work and did not mention any problems of his own.

Appellant objected to Respondent's questions about the prior testimony as "improper impeachment of a collateral matter by extrinsic evidence." The trial court overruled Appellant's objection and allowed Respondent to ask Appellant about his comments during the previous litigation. In this regard, Respondent elicited the following testimony:

Q: Mr. Litton, earlier we were talking about the business you were operating near the time or one of the businesses you were involved in at the time of the accident. Precision Performance Products, Incorporated. You recall that?

A: Yes.

Q: Do you recall or did you sell that business because sales dwindled?

A: Yes.

Q: And did you testify why sales dwindled in a previous matter?

A: Yes.

Q: And did you give your headaches or your physical condition as a reason why sales dwindled with respect to Precision Performance Products?

A: No.

This was the extent of the evidence that Appellant now complains of on appeal. Respondent did not present any further evidence in this regard. Appellant contends that, through this questioning, Respondent was improperly allowed to introduce "extrinsic evidence" of a collateral matter. In response, Respondent argues that this "extrinsic evidence" was properly admitted because was relevant to the case and did not relate to a collateral matter.

■ In our view, the parties misperceive the concept of "extrinsic evidence." "Extrinsic" means "from outside sources." **Black's Law Dictionary**, 6th Ed. at 588 (1990). In the context of impeaching a witness with extrinsic evidence of a prior inconsistent statement, "extrinsic evidence" means evidence of the prior inconsistent statement "offered other than through the witness himself" (i.e. another witness that heard the inconsistent comment, a transcript of prior proceedings, an audio tape of the comment, etc.). *State v. Foster*, 854 S.W.2d 1, 8 (Mo.App. W.D. 1993) (quoting J.W. Strong, Editor, *McCormick on Evidence* § 49 (4th ed.1992)); *See also State v. Boyd*, 871 S.W.2d 23, 26 (Mo.App. E.D.1993).

■ "It is elementary that prior inconsistent statements of a witness, whether made in or out of court, are admissible for impeachment as affecting the witness' credibility." *State v. R.D.G.*, 733 S.W.2d 824, 828 (Mo.App. S.D.1987). Before extrinsic evidence may be used to impeach a witness with regard to a prior inconsistent statement, " '[t]he witness must be given a chance to refresh his recollection of the prior statement and to admit, deny, or explain it.' " *Nichols v. Preferred Risk Group*, 44 S.W.3d 886, 892 (Mo.App. S.D. 2001) (quoting *Johnson v. National Super Mkts., Inc.*, 752 S.W.2d 809, 812 (Mo.App.

E.D.1988)). Such testimony provides the necessary foundation for the admission of extrinsic evidence of the prior inconsistent statement. *Id.* However, "if a witness unequivocally admits he has made a prior inconsistent or contradictory statement, further proof thereof is unnecessary and inadmissible because the witness, by his admission, has thereby impeached himself." *State ex rel. City of Warrensburg v. Stroh*, 690 S.W.2d 215, 217 (Mo.App. W.D. 1985).

■ In the case at bar, Appellant was asked about his prior sworn testimony during cross-examination and admitted having offered that testimony in the previous litigation. Thereafter, Respondent did not seek to admit any extrinsic evidence of that prior testimony. Obviously, the trial court cannot be deemed to have erred in admitting extrinsic evidence of a prior inconsistent statement where no extrinsic evidence of the statement was ever even offered. Point denied.

■ In his second point, Appellant claims the trial court erred in assessing deposition expenses as taxable costs against Appellant under § 492.590. In its judgment, the trial court ordered Appellant to pay the costs of the proceedings. Included in the costs taxed to Appellant were $1,993.60 in deposition expenses incurred by the defense in the case. Appellant notes that under § 492.590 a party must have been "liable" for the deposition expenses and that the insurance company that paid those costs was not a party to the action. Appellant claims that no "party" can be deemed to have "incurred" those deposition expenses because Mr. Kornbrust was deceased, no estate had been opened on behalf of Mr. Kornbrust, and the defendant *ad litem* was not per-

sonally liable for the costs.[2]

■ Section 514.060 "clearly states that '[i]n all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law.'" *Moore v. Cordes,* 19 S.W.3d 168, 169 (Mo.App. W.D.2000); *See also Rule 77.01.* Section 492.590.1 specifically provides that deposition expenses are to be considered taxable as costs.[3] *In Interest of J.P.,* 947 S.W.2d 442, 444 (Mo. App. W.D.1997). That section states, in relevant part:

> The costs and expenses of depositions ... shall be awarded as a judgment in favor of the party or parties requesting the same ... Any party incurring such costs or expenses may request the taxing of such costs or expenses actually incurred by that party whether or not such depositions were taken at the instance [sic] of that party or some other party to the suit or suits ...

*§ 492.590.1.* As used in this statute, "incurred" means "to become liable for." *Burwick v. Wood,* 959 S.W.2d 951, 952 (Mo.App. S.D.1998).

Appellant contends that the deceased Mr. Kornbrust could not become liable for the costs incurred after his death and that no estate had been opened that ever became liable for the costs. Appellant also notes that according to § 537.021.3, "[t]he defendant ad litem shall not be liable for court costs unless specially charged by the court for personal misconduct in the action." Appellant argues that, given the

foregoing set of circumstances, no "party" ever became liable for the costs of the deposition.

■ We initially note that Appellant has failed to include a transcript of the hearing on his Motion to Re–Tax costs. Accordingly, this Court has no way of knowing what evidence, if any, may have been presented at that hearing or what arguments were made by the parties to the trial court. "[I]t is up to the appellant to file those portions of the transcript necessary for determination of the issues on appeal." *Wilson v. River Mkt. Venture I, L.P.,* 996 S.W.2d 687, 696 n. 3 (Mo.App. W.D.1999) (citing *Rule 81.12* ). Appellant's shortcomings in failing to provide this court with an adequate record on appeal would likely mandate that we affirm the trial court.

We note, however, that even assuming, *arguendo,* that the record and stipulations by the parties sufficiently support the factual assertions made in their arguments on this point, Appellant's claim has no merit as a matter of law.

■ The crux of Appellant's argument is that the deposition expenses were paid by Mr. Kornbrust's insurer and that neither Mr. Kornbrust, his estate, nor the defendant ad litem "incurred" those expenses. Appellant, therefore, contends that the trial court misinterpreted and misapplied the law to the facts in finding that a "party" had "incurred" those expenses within the meaning of § 492.590. In reviewing the trial court's application of

---

**2.** Under the applicable case law, "[t]he general rule is that in the absence of an abuse of discretion the Court of Appeals will not disturb the taxing of costs." *Wells v. Orthwein,* 670 S.W.2d 529, 534 (Mo.App. E.D.1984) (citing *Mechanics' Am. Nat'l Bank v. Rowell,* 182 S.W. 989 (Mo.1916)); *See also Paskel v. Director of Revenue,* 44 S.W.3d 898, 898–99 (Mo.App. E.D.2001); *Sola v. Bidwell,* 980

S.W.2d 60, 67 (Mo.App. W.D.1998); *Hoag v. McBride & Son Inv. Co.,* 967 S.W.2d 157, 175 (Mo.App. E.D.1998).

**3.** "Unless it is specifically authorized by statute or by agreement of the parties, an item is not taxable as a cost." *In Interest of J.P.,* 947 S.W.2d 442, 444 (Mo.App. W.D.1997).

the law to the facts, we afford the trial court no deference and reach our own conclusions about the application of the law to the facts presented. *John L. Thuston & Assocs. v. F.D.I.C.*, 869 S.W.2d 105, 107 (Mo.App. W.D.1993).

In *Burwick v. Wood*, 959 S.W.2d 951 (Mo.App. S.D.1998), the Appellant challenged an award of deposition costs claiming that the Respondent had not "incurred" them because her liability insurer had paid those costs. *Id.* at 952. In *Burwick*, the court noted that "[t]here is no requirement in Section 492.590, that the party actually pay the cost, but that they be 'incurred' by that party." *Id.* The court held that the trial court could reasonably have found that the Respondent would have borne the costs related to those depositions had the insurance company not done so and that Respondent could be considered "liable" for those costs. *Id.*

We see no reason to differentiate this case from *Burwick* merely because Mr. Kornbrust was deceased. In making this claim, Appellant misunderstands the nature of an action against a defendant *ad litem* and the defendant *ad litem's* role in the underlying action.

Section 537.021 provides, in relevant part:

1. The existence of a cause of action for an injury to property, for a personal injury not resulting in death, or for wrongful death, which action survives the death of the wrongdoer or the person injured, or both, shall authorize and require the appointment by a probate division of the circuit court of:

\* \* \*

(2) A personal representative of the estate of a wrongdoer upon the death of such wrongdoer; provided that, if a deceased wrongdoer was insured against liability for damages for wrongdoing and damages may be recovered from the wrongdoer's liability insurer, then the court in which any such cause of action is brought shall appoint at the request of the plaintiff or other interested party a qualified person to be known as a defendant ad litem. The defendant ad litem when so appointed shall serve and act as the named party defendant in such actions in the capacity of legal representative of the deceased wrongdoer and such appointment and any proceedings had or judgment rendered in such cause after such appointment shall be binding on the insurer of such deceased wrongdoer to the same extent as if a personal representative had acted as the legal representative of such deceased wrongdoer in such cause of action.

\* \* \*

3. The defendant ad litem may be allowed a reasonable fee by the court appointing him which shall be taxed as court costs. The defendant ad litem shall not be liable for court costs unless specially charged by the court for personal misconduct in the action.

Section 537.021 "allows for an action to be filed against a defendant *ad litem* when a person otherwise liable for damages for wrongdoing is deceased, but was insured against liability for damages." *Atlanta Cas. Co. v. Stephens*, 825 S.W.2d 330, 333 (Mo.App. W.D.1992). "Section 537.021 'merely creates a nominal defendant—one who has no personal interest in or liability for the litigation.'" *McConnell v. Kelly*, 860 S.W.2d 362, 363 (Mo.App. E.D.1993) (quoting *State ex rel. Gannon v. Gaertner*, 592 S.W.2d 214, 216 (Mo.App. E.D.1979)). "The legislative purpose for the statute was to simplify [the] burdensome procedure of normal estate administration in cases where there was no probate estate and the liability insurer was

the 'real defendant,' and to substitute the so called defendant *ad litem* for the formerly required administrator; the defendant *ad litem* is to serve as the named defendant in the capacity of the deceased's legal representative." *Id.* (quoting *State ex rel. Kasmann v. Hamilton*, 731 S.W.2d 345, 347 (Mo.App. W.D.1987)). "Any judgment against the defendant *ad litem* is binding on the insurer of the deceased wrongdoer to the same extent as if a personal representative had acted as the legal representative of the deceased wrongdoer." *Atlanta Cas. Co.*, 825 S.W.2d at 333.

Mr. Kornbrust contracted with an insurance company to provide him with liability insurance. That contract remained binding on the insurance company even after Mr. Kornbrust's death, and his insurance company provided him with a defense pursuant to that contract. The defendant *ad litem*, as legal representative for Mr. Kornbrust, "incurred" the deposition costs on Mr. Kornbrust's behalf during the course of the defense and thereby bound the insurer to pay those costs in the same way that the defendant in *Burwick* "incurred" the deposition expenses arising in the course of her defense. *See Burwick*, 959 S.W.2d at 952. The insurance company paid the costs of the depositions on Mr. Kornbrust's behalf. Had Mr. Kornbrust not been insured, the probate division of the circuit court would have had to appoint a personal representative for his estate instead of a defendant *ad litem*, § 537.021.1(2), and his estate would have incurred the costs of his defense. Therefore, in a very real sense, Mr. Kornbrust bore the costs of his defense by contracting with an insurance company to cover any costs incurred in his defense, and the deposition costs at issue were paid by the insurance company on his behalf.

As noted, *supra*, the defendant *ad litem* is merely a nominal defendant acting as the legal representative for Mr. Kornbrust, and the liability insurer is the "real defendant" in the case. *Atlanta Cas. Co.*, 825 S.W.2d at 333. Had Appellant prevailed at trial, any deposition expense incurred by Appellant would have been nominally taxed against the defendant *ad litem*, and Mr. Kornbrust's insurer would have been bound to pay those costs as part of the judgment. § 537.021.1(2). We can perceive no reason under the applicable rules, statutes, case law or general principles of logic and equity why the trial court should not be able to tax the deposition costs incurred in the defense of this case against Appellant, a plaintiff who did not prevail at trial, and nominally award them to the defendant *ad litem*, as the legal representative of Mr. Kornbrust. Point denied.

The judgment of the trial court is affirmed.

All concur.