Mark D. Pfeiffer, Chief Judge
Ms. Stacy S. Minze ("Minze") appeals from the judgment entered by the Circuit *578 Court of Cole County, Missouri ("trial court"), after a jury verdict on retrial after remand, in favor of the Missouri Department of Public Safety ("Department") on Minze's petition for retaliation under the Missouri Human Rights Act ("MHRA"). Minze asserts that the trial court: (1) erred in admitting evidence and permitting the Department to use that evidence to impeach her; (2) erred in overruling her objections to the Department's closing argument; and (3) lacked jurisdiction to hear retrial of the case. We affirm.
Factual and Procedural History[1]
On June 22, 2009, Minze filed a petition against the Department, the Missouri Capitol Police Department, and Todd Hurt, individually and in his official capacity as Chief of the Missouri Capitol Police, alleging that while employed as a Capitol Police Officer, she was subjected to unlawful discrimination based on sex (Count I) and retaliation in violation of the MHRA (Count II). A jury trial was conducted on August 21, 2012. The jury returned a verdict for the Department, the Missouri Capitol Police, and Todd Hurt on Minze's sex discrimination claim (Count I) and for Minze against the Department on Minze's unlawful retaliation claim (Count II). The jury awarded her $70,000 in actual damages and $70,000 in punitive damages. The trial court entered judgment for Minze and against the Department in the total amount of $500,113.42, which included $360,113.42 for attorney's fees and costs. The Department appealed. On April 8, 2014, this court issued its opinion, reversing the trial court's judgment due to instructional error and remanding the case for a new trial. Minze v. Mo. Dep't of Pub. Safety , 437 S.W.3d 271 (Mo. App. W.D. 2014) (" Minze I" ).
Upon remand, Minze amended her pleadings as to the retaliation claim against the Department and the case was again tried to a jury, which returned a unanimous verdict for the Department. The trial court entered judgment on the jury's verdict in favor of the Department. Minze's motion for new trial was overruled by operation of Rule 78.06.
Minze timely appealed.
Point I-Admission of Evidence and Cross-Examination
In Minze's first point, she asserts that the trial court erred in admitting into evidence "superseded pleadings,"[2] including the Charge of Discrimination ("Charge") that was attached as an exhibit to her original petition, and in permitting the Charge to be used during her cross-examination to impeach her.
Standard of Review
"[T]he admissibility of evidence lies within the sound discretion of the trial court, including the introduction of evidence for the purposes of impeachment." Litton v. Kornbrust , 85 S.W.3d 110, 113 (Mo. App. W.D. 2002) (internal citation omitted) (internal quotation omitted). Furthermore, "the extent and scope of cross-examination in a civil action is within the discretion of the trial court and will not be *579 disturbed unless an abuse of discretion is clearly shown." Id. (internal quotation omitted). A trial court abuses its discretion if its ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. Id.
Analysis
Simply put, this is not a "superseded pleading" case but is, instead, use of evidence demonstrating that Minze had previously made statements that were inconsistent in a material way with Minze's trial testimony. Minze's claim on appeal fails.
A pleading has been defined as "any complaint, answer, reply, application, protest, petition for review, or motion." Moxness v. Hart , 131 S.W.3d 441, 446 (Mo. App. W.D. 2004). See also Rule 55.01.[3] Suggestions in support of motions have also been denominated pleadings. Id. at 447. Pleadings have similarly been described as the " 'formal allegations by the parties to a lawsuit of their respective claims and defenses, with the intended purpose being to provide notice of what is to be expected at trial.' " Gerlach v. Mo. Comm'n on Human Rights , 980 S.W.2d 589, 591 (Mo. App. E.D. 1998) (quoting BLACK'S LAW DICTIONARY 1152 (6th ed. 1990)).
Here, the Charge that was attached as an exhibit to a pleading, while forming part of the statutory prerequisite to Minze's MHRA action, see Daffron v. McDonnell Douglas Corp. , 874 S.W.2d 482, 484 (Mo. App. E.D. 1994),[4] is not itself a pleading in the present discrimination lawsuit.[5] Hence, Minze's claim that the trial court committed error by permitting the introduction of "superseded pleadings" is without merit.
Instead, the trial court properly permitted the Charge to be used by the Department as impeachment evidence. Cross-examination of a witness on the stand for the purpose of impeaching that witness has long been permitted in Missouri, "subject to the trial court's discretion in limiting or, in rare instances, precluding such evidence entirely so as to avoid undue prejudice." Mitchell v. Kardesch , 313 S.W.3d 667, 676 (Mo. banc 2010). "Missouri similarly permits cross-examination where the witness's testimony at trial is inconsistent with a prior statement, but here the cases generally require the prior statement to be about a material issue." Id. Materiality is broadly defined to include statements affecting credibility. Id. Furthermore, a party may impeach or contradict a witness on matters brought out on direct examination.
*580 Maugh v. Chrysler Corp. , 818 S.W.2d 658, 661 (Mo. App. W.D. 1991). "Broadly speaking, any statement of a witness inconsistent with his testimony should be admitted to discredit or impeach him, whether made in or out of court." Neavill v. Klemp , 427 S.W.2d 446, 448 (Mo. 1968) (internal quotation omitted).
On direct examination, Minze testified that she received a letter from the Department, Missouri Capitol Police, dated March 4, 2008, signed by Chief Hurt, which informed her that upon expiration of her FMLA entitlement, the approval of her claim for long-term disability benefits, and in the interest of having her position filled, she was considered to have resigned in good standing from her position as Capitol Police lieutenant. Within a day or two after receiving the letter, Minze went to the Capitol Police office to clean out her office. She testified that she met with Chief Hurt and asked him if she could have her leave extended until she could come back to work full duty, but he refused to keep Minze's position open. Minze testified that Chief Hurt's denial of her request to remain on unpaid leave in lieu of termination was one of four acts of retaliation in response to her sex discrimination claim against the Department.
On cross-examination, counsel for the Department asked Minze whether Chief Hurt's statement to her that he was not going to grant her any additional unpaid leave was significant with regard to her retaliation claim; Minze replied that it was. Counsel for the Department then questioned Minze about the Charge she filed. In the Charge, Minze alleged that the Department and the Missouri Capitol Police discriminated against her based on her sex and disability and in retaliation for her having filed a formal grievance with the Director of the Department. By way of example, she described in detail eleven "specific acts of discrimination." Not included in the Charge was her allegation that Chief Hurt denied Minze's request that her leave be extended until she could come back to work full duty. Counsel for the Department cross-examined Minze about the Charge she filed:
Q: ... And it's pretty detailed. It talks a lot about your issues with Chief Hurt. Correct?
A: Yes.
....
Q: Now, this document doesn't contain anything about asking Chief Hurt for additional leave when you ... went in to clean out your office. Right?
A: No.
Q: But that's one of your four major acts of retaliation that you're claiming here. Right?
A: That I was-yes.
Q: But this document includes all of the acts of discrimination and retaliation that you experienced from the Department of Public Safety. Right?
A: I don't think it includes all of them. This is a summary, my understanding of this is a summary to create the charge, and then the Commission on Human Rights would do an investigation into this and get more information as it went.
....
Q: And then where in here did you put anything about asking Chief Hurt for leave?
A: I don't think that that is one of the things that mentions specifically.
Q: But you knew it was an act of retaliation when he turned down the leave. Right?
A: Yes.
Q: Now, so I think you're telling me now that there's an act of retaliation that wasn't included in your charge of discrimination that you filed with *581 the Missouri Commission on Human Rights. Right? The leave as an act of retaliation, it's not in your charge of discrimination?
A: Right.
....
Q: You were writing down all the acts of discrimination and retaliation?
A: Yes.
Q: And one of the last things that happened to you is that you were cleaning out your office and Todd Hurt told you you cannot have any more leave. Right?
A: He told me he would not hold my position, which was a Capitol Police policy as well as a personnel rule, yes.
Q: And you knew immediately when he told you that that was because of your grievance; that was further retaliation?
A: Yes.
Q: But even though you knew it immediately, this is further retaliation, [you] didn't include it in your charge of discrimination?
A: I did not. I did not put everything in there. Like I said, it was my understanding, this is the summary of the things and that once an investigation by the department-or the Commission on Human Rights, then I could go into any more detail that I needed to on anything.
Minze testified that she knew at the time she made her Charge that she believed Chief Hurt's denial of her leave was a major act of retaliation and that it was one of the four acts of retaliation in response to her sex discrimination complaint. The Department could properly impeach her credibility by challenging her testimony that she asked Chief Hurt for an additional leave without pay, and he denied her request for leave in lieu of termination, by cross-examining her concerning the omission of the incident from the Charge. For, the omission by a witness from prior statements of facts related at the trial, or a contrast in emphasis upon the same facts, are also relevant to the cross-examining process of challenging the witness's trial testimony.
The trial court did not abuse its discretion in admitting the evidence for the purpose of impeachment.
Point I is denied.
Point II-Closing Argument
In Minze's second point, she claims the trial court erred in overruling her objection to the Department's closing argument because the Department misstated the law concerning the standard of liability in retaliation cases under the MHRA. We disagree.
Standard of Review
"Counsel on both sides of the bar are permitted wide latitude and discretion in referring to evidence and arguing inferences during closing argument." Hemann v. Camolaur, Inc. , 127 S.W.3d 706, 710 (Mo. App. W.D. 2004) (internal quotation omitted). Therefore, we review the trial court's decision to overrule Minze's objection to this portion of the Department's closing argument for abuse of discretion; that is, "we must determine whether [the Department's] counsel's comments, when interpreted in light of the entire record, were plainly unwarranted and clearly injurious to [Minze]." Id. Here, the comments were neither.
Analysis
Minze argues that by using words such as "caused" or "because," in closing argument, the Department's counsel misstated the law as it relates to the correct causation standard in the present MHRA retaliation case.
*582 Under the MHRA, it is an unlawful discriminatory practice to retaliate "in any manner" against an employee who "has filed a complaint ... pursuant to this chapter." § 213.070(2). Minze was required to establish that: "(1) [s]he complained of discrimination; (2) [the Department] took adverse action against [her]; and (3) a causal relationship existed between the complaint and the adverse action." Soto v. Costco Wholesale Corp. , 502 S.W.3d 38, 48 (Mo. App. W.D. 2016). To satisfy the causation standard, Minze was required to demonstrate that her complaint of discrimination was a "contributing factor" to the Department's adverse employment action. Id. "A contributing factor is a condition that contributes a share in anything or has a part in producing the effect." Id. (internal quotation omitted).
During closing argument, the Department's counsel presented the verdict director to the jury:
If we look at the verdict director Instruction No. 6.... [T]o return a verdict for Stacy Minze, ... [s]he has to prove to you with the preponderance of the evidence that she complained of discrimination. Second, that her light-duty request was denied or that her request for unpaid leave was denied, that she was discharged or that she changed the Missouri Capitol Police-they changed the policy on her.
The Department's counsel talked about each element, and then stated:
Not only do they have to prove those things to you, but they have to prove that her complaint of discrimination was a contributing factor.
Now, they've been saying that these things happened to her because she made a complaint. That's what contributing factor means. That's what the Missouri Human Rights Act prohibits. It prohibits the employer from taking that complaint of discrimination and using that against its employees. Right? If you contribute-if the complaint contributes , it has to have an impact. It has to mean something. Stacy Minze's complaint is not the reason this all happened. Stacy Minze's medical condition is the reason this happened....
(Emphasis added.) The trial court then interrupted counsel's closing argument and took a short recess because one juror fell ill. After the interruption, the Department's counsel continued: "So we just looked at what it takes for you to find for Stacy Minze. Right? She has to prove to you that her complaint of discrimination caused the deemed resigned, the light-duty denial, the additional leave denial or-" (Emphasis added.) Minze's counsel objected on the grounds that the argument misstated the law. The trial court overruled the objection. The Department's counsel continued, "Or that the policy was changed somehow because of her complaint of discrimination." (Emphasis added.)
Minze argues that by applying the Department's misstatement of the law, the jury was permitted to find liability only if the complaint of retaliation "caused" as opposed to "contributed to" the adverse actions taken against her. We disagree.
First, we note that the Missouri Supreme Court has described the "contributing factor" language as a "causation standard." See Fleshner v. Pepose Vision Inst., P.C. , 304 S.W.3d 81, 94 (Mo. banc 2010) ("The 'contributing factor' causation standard has been articulated in other recent employment discharge cases.... The adoption of MAI 31.24 in 2005 brought a new causal standard: whether the illegitimate purpose was a 'contributing factor' in the employment decision." (emphasis added) (citing Daugherty v. City of Md. Heights , 231 S.W.3d 814 (Mo. banc 2007) )). In addition, in Minze's First *583 Amended Petition, she alleges that "[a] causal relationship existed between Plaintiff's MHRA protected sex discrimination complaint and the denial of her light duty requests[,] ... the termination of her employment[,] ... the denial of her request for an unpaid leave of absence in lieu of termination[,] ... and the adoption of the 'Minze policy' denying her the right to reinstatement with [Missouri Capitol Police] at the same rank and pay she held on the date of her termination." Hence, both the Missouri Supreme Court and Minze recognize words like "cause" or "causal" constitute broad terms that encompass the specific "contributing factor" standard for liability. In other words, the "contributing factor" standard is neither distinct from nor in tension with the requirement of "causation." By specifically referencing the "contributing factor" standard in closing argument, followed by more general and generic terms, such as "caused" or "because," the Department's counsel did not make statements that were "plainly unwarranted" in the context in which they were used.
Moreover, Minze cannot demonstrate that any alleged misstatement of the law by the Department's counsel's closing argument statements were "clearly injurious" to Minze. For, as a general principle, even if counsel misstates the law in closing argument, as long as the trial court properly instructs the jury, we will rarely find reversible error. Peterson v. Progressive Contractors, Inc. , 399 S.W.3d 850, 861 (Mo. App. W.D. 2013). Minze does not argue that the jury was not provided with the proper law regarding retaliatory discharge. The jury was instructed on the "contributing factor" standard in Instruction Number 6:
Instruction No. 6, your verdict must be for plaintiff if you believe, first, plaintiff complained of employment discrimination based on sex and, second, defendant either denied plaintiff's light-duty request or denied plaintiff's request to remain on unpaid leave of absence in lieu of termination or discharged plaintiff or changed Missouri Capitol Police policy number B-1 in order to make plaintiff ineligible for reinstatement as a lieutenant with Missouri Capitol Police and, third, plaintiff's complaint of employment discrimination based on sex was a contributing factor in such denial of plaintiff's light-duty request, such denial of plaintiff's request to remain on unpaid leave of absence in lieu of termination, such discharge or such change in Missouri Capitol Police policy number B-1 in order to make plaintiff ineligible for reinstatement as a lieutenant with Missouri Capitol Police and, four, that as a direct result of such conduct, plaintiff sustained damage.
(Emphasis added.) The trial court read the instruction to the jury, and the written instruction was available to the jury in the jury room. "The jury is bound to follow the trial court's instructions[,] and we presume that it will even to the extent that doing so might require the jury to ignore specific argument of counsel in conflict." Peterson , 399 S.W.3d at 861 (internal quotation omitted).
In light of the entire record, the Department's counsel's comments were not plainly unwarranted and were not clearly injurious to Minze. Accordingly, the trial court did not abuse its discretion in overruling Minze's objection to the Department's closing argument.
Point II is denied.
Point III-Jurisdiction
In Minze's third point, one needs a score card to figure out "who's on first base." As we understand the less-than-straightforward argument of the point relied on, though she never complained to this court *584 that we lacked jurisdiction in Minze I , apparently due to an alleged defect in the Department's notice of appeal in Minze I , she now claims that, in fact, our court had no jurisdiction to issue our opinion in Minze I and it is void; likewise, all proceedings by the trial court upon remand are equally void. Hence, though the remedy sought by Minze in this point is unclear, we presume that she is presently: (1) requesting that we recall the mandate of Minze I due to jurisdictional defect; (2) order that all proceedings in the retrial of this case be deemed void-including the judgment after the jury retrial; (3) order reinstatement of the original judgment prior to the appeal in Minze I ; and (4) dismiss the present appeal for a continuing lack of appellate jurisdiction. Aside from noting that there are a host of procedural anomalies and lack of substantive support for the claims made by Minze in this point, we find that wading into this discussion is unnecessary as the record refutes any claim of procedural defect in Minze I ; hence, the underlying basis for Minze's present jurisdictional complaint does not exist, and her point on appeal must fail.
Rule 81.04(a) provides:
If an appeal is permitted by law from a trial court, a party may appeal from a judgment, decree, or order by filing with the clerk of the trial court a notice of appeal. No such appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment, decree, or order appealed from becomes final.
When a party submits the notice of appeal to the trial court clerk, the clerk "shall note the date a notice of appeal was received if it is accompanied by: (1) The docket fee; or (2) A statement citing specific statutory or other authority demonstrating a docket fee is not required by law; or (3) A motion to prosecute the appeal in forma pauperis." Rule 81.04(e). "A notice of appeal received by the trial court clerk with a docket fee or with a statement demonstrating no docket fee is required is deemed filed on the date the clerk receives it." Rule 81.04(f).
The timely filing of a notice of appeal and the paying of the docket fee are jurisdictional requirements for an effective appeal, Harris v. Wallace , 524 S.W.3d 88, 89 (Mo. App. W.D. 2017), unless an exception applies.[6] The trial court entered its judgment in Minze I on December 18, 2012. On January 17, 2013, the Department filed its motion for judgment notwithstanding the verdict or for new trial, which was denied on January 30, 2013. Within ten days of that date, on February 7, 2013, it is undisputed that the Cole County Circuit Court clerk received a letter from the Missouri Attorney General enclosing the Department's notice of appeal and advising that "No docket fee accompanies this filing. No docket fee is required because this is an appeal by a Department of the State. Carpenter v. King , 679 S.W.2d 866 (Mo. banc 1984)." This letter and the accompanying Notice of Appeal are both file-stamped February 7, 2013. The Case.net docket entry for that date reflects that the notice of appeal was filed and that "No Filing Fee Due."
The undisputed procedural history of the appeal in Minze I reflects that the Department timely filed its notice of appeal, which was accompanied by a letter *585 containing case authority demonstrating that a docket fee was not required by law.[7] Thus, the Department satisfied the jurisdictional requirements for an effective appeal in Minze I . Minze's argument that all subsequent actions in the Minze I appeal and retrial were taken without jurisdiction is without merit.
Point III is denied.
Conclusion
The trial court's judgment is affirmed.
James Edward Welsh and Gary D. Witt, Judges, concur.

We view the evidence in the light most favorable to the jury's verdict, disregarding contrary evidence. Soto v. Costco Wholesale Corp. , 502 S.W.3d 38, 44 n.1 (Mo. App. W.D. 2016).

"As a general rule, an amendment to a pleading abandons any prior pleadings not referred to or incorporated into the new pleading." Babb v. Mo. Pub. Serv. Comm'n , 414 S.W.3d 64, 78 (Mo. App. W.D. 2013) (internal quotation omitted) (citing State ex rel. Bugg v. Roper , 179 S.W.3d 893, 894 (Mo. banc 2005) (holding that once an amended pleading is filed, any prior pleadings not referred to or incorporated into the new pleading are considered abandoned)).

All rule references are to I Missouri Court Rules-State 2017.

A plaintiff must file a complaint regarding an unlawful employment practice with the Missouri Commission on Human Rights ("MCHR") within 180 days of the alleged discriminatory act, § 213.075.1, RSMo 2016, in order to receive a right-to-sue letter, and a plaintiff must receive a right-to-sue letter before he or she may file a civil action based on the allegedly discriminatory act, § 213.111.1, RSMo 2016. Daffron v. McDonnell Douglas Corp. , 874 S.W.2d 482, 484 (Mo. App. E.D. 1994).

Minze alleged in her first amended petition that she met the conditions precedent to filing her lawsuit by timely filing a Charge of Discrimination with the MCHR and receiving her right-to-sue letter. See Pub. Sch. Ret. Sys. of Sch. Dist. of Kansas City v. Mo. Comm'n on Human Rights , 188 S.W.3d 35, 44 (Mo. App. W.D. 2006) ("Although not jurisdictional, a right-to-sue letter is a prerequisite to the filing of a MHRA claim in state court. Igoe v. Dep't of Labor & Indus. Relations of the State of Mo. , 152 S.W.3d 284, 287 (Mo. banc 2005).").

We note that in Deever v. Karsch & Sons, Inc. , 144 S.W.3d 370, 372 (Mo. App. S.D. 2004), the court found no reason to distinguish between the docket fee required by Rule 81.04(c) and the surcharge required by section 488.031. Section 488.031.2 specifically provides that "the additional fees prescribed by this section shall not be collected ... when costs ... are to be paid by the state, county, municipality, or other political subdivision of this state."

In Carpenter v. King , 679 S.W.2d 866 (Mo. banc 1984), the City of St. Louis recorder of deeds brought an action for declaratory judgment to resolve whether the Director of Revenue was required to pay a fee for filing and recording notices of sales tax liens and releases thereof. Id. at 867. The circuit court entered judgment for the Director, and the State appealed. The Missouri Supreme Court held that there was no statutory authorization to require the Director to pay such a fee. Id. at 868.