**Michael K. BREECE, Plaintiff,**

v.

**ALLIANCE TRACTOR–TRAILER TRAINING II, INC.,**
**Defendant.**

**Civ. A. No. 92–1074–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

March 16, 1993.

John Alfred Taylor, Janette Marie Blee, Carr, Goodson & Lee, Fairfax, VA, for plaintiff.

John J. Brandt, Slenker, Brandt, Jennings & Johnson, Merrifield, VA, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HILTON, District Judge.

This case was tried before the court, and upon the evidence presented and argument of counsel, the court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. This action has been brought under the Americans with Disabilities Act of 1990. 42 U.S.C. § 12101, *et seq.*

2. Plaintiff Michael K. Breece suffers from a severe hearing impairment. Mr. Breece's hearing impairment constitutes a physical impairment that substantially limits one or more of his major life activities. In addition, Mr. Breece has a record of having such impairment and is regarded as having such an impairment. As such, Mr. Breece has a disability within the meaning of 42 U.S.C. § 12102(2).

3. Defendant Alliance Tractor–Trailer Training II, Inc. is a North Carolina corporation which operates a school for training individuals to operate tractor-trailer vehicles in Wytheville, Virginia. As a place of education, Alliance is a public accommodation under the Americans with Disabilities Act. 42 U.S.C. § 12181(7).

4. Alliance's training program is known within the trucking industry for its special emphasis on having students drive tractor-trailers on public roads with individualized instruction from teachers sitting with the student drivers in the truck cab. Sixty percent of the seven week course—over 200 hours—is spent driving first on single lane roads, then on larger thruways and finally on the interstate system itself. Students begin the public road driving segment with empty trailers, progress to driving semi-full trailers, and finally drive fully-loaded tractor-trailers.

5. On January 23, 1992, Mr. Breece applied for admission in Alliance's tractor-trailer training school and attended an interview at the school where he met with Mr. Jerry Patrick, an Alliance recruiter, and Mr. Mark Pressley, Alliance's President.

6. During the interview, Mr. Patrick questioned Breece's qualifications for admission because of the impairment. Mr. Breece proposed that his hearing impairment could be accommodated by having a sign language interpreter in the cab of the tractor-trailer during the public road training segment of the course. He suggested that the truck cab could be modified so that the instructor could stand behind him and plaintiff could continually "glance around" at the interpreter in order to understand the instructor's instructions, questions, comments, and warnings.

7. Mr. Patrick and Mr. Pressley gave Mr. Breece a tour of Alliance's facilities and pointed to Mr. Hoback, Alliance's training director and chief instructor, while he was teaching a class, and said that Mr. Breece

should return to meet with Mr. Hoback to discuss his application and suggested modification to accommodate his hearing impairment.

8. Mr. Breece never contacted Mr. Hoback or returned to Alliance. Finally, after Mr. Patrick and Mr. Pressley consulted with Mr. Hoback, Alliance concluded that it could not safely accommodate Mr. Breece's hearing impairment during the integral public road training segment of the course and thereafter rejected Mr. Breece's application.

9. Mr. Breece indicated that he had been accepted into the Tri–State tractor-trailer training school in Richmond, Virginia. However, Ms. Selma Day and Ms. Jill Balet, two admissions officers from Tri–State, testified at trial that Mr. Breece was never accepted at Tri–State. Ms. Ballet testified that Tri–State's policy is to admit students only after having been offered driving positions by two truck companies. Ms. Ballet offered to help Mr. Breece obtain approval by truck companies, but he never took any steps to do so.

10. Mr. Breece wrote on his application to Alliance that he had never been criminally convicted. However, he had been convicted for illegal possession of burglary tools. He answered that his hearing was good. When questioned about it during the interview, he indicated his hearing impairment.

11. Mr. Breece demonstrated at trial the extent of his hearing impairment. Despite having his attorney stand next to him at the witness stand in the stillness of the courtroom, Mr. Breece could not understand and repeat some of the words his attorney called out in a loud voice. Even with a sign-language interpreter, Mr. Breece had difficulty understanding the questions he was asked in court.

12. Dr. Allen R. Robinson teaches education courses in automobile, motorcycle, and truck driving at Indiana University of Pennsylvania. Since beginning his career in traffic safety education in 1964, he has trained individuals to drive cars, motorcycles, medium trucks and developed instructor training programs. Dr. Robinson's only experience training tractor-trailer drivers was a summer course for 28 individuals at the National Institutes of Health.

13. Dr. Robinson testified at trial that Mr. Breece could be safely accommodated with an earphone amplification device on Alliance's trucks, a truck driving simulator, and expanded in-class training. Mr. Robinson thought that these accommodations could even substitute for the road driving segment of the course.

14. Alliance's officers testified at trial that truck simulators have little pedagogical value because they lack the requisite fear element of truck driving on the interstate highway system.

15. Alliance's Mr. Jack Hoback testified that the modifications sought by Mr. Breece would not only be unsafe, but would fundamentally alter the nature of Alliance's road driving oriented tractor-trailer training program.

16. Mr. Jack Hoback has been an instructor at Alliance for a decade and has trained over 4,000 students how to drive a tractor-trailer. Prior to becoming a driving instructor, Mr. Hoback was a tractor-trailer truck driver for 11 years and trained other truck drivers for his employers. Before becoming a truck driver, Mr. Hoback attended a truck driving school. Mr. Hoback has experience driving over 2,000,000 miles of public roads on a tractor-trailer.

17. Mr. Hoback described the importance of the public road driving segment of the course and how it cannot be replaced by expanded in-class training. He said that regardless of the amount of in-class training prior to driving trucks on the road, every one of his thousands of students has gotten into a morass when driving on the road that has required personal interaction and instruction with the in-cab trainer making quick commands to get out of it. These intense situations constitute the major pedagogical benefit of Alliance's road training segment.

18. Mr. Hoback further testified that based upon the evidence available to him he determined that the modifications requested by Mr. Breece and Mr. Breece's inability to understand an instructor in a truck cab with the engine running balanced against the se-

verity of risking a major accident on a public highway in a tractor-trailer led to his conclusion that Mr. Breece's admission to the school would constitute a direct threat to public safety.

19. Mr. Hoback testified that Mr. Breece's inability to repeat words his lawyers said at trial provided him with further evidence that Mr. Breece would be unable to understand his instructors in a tractor-trailer and that it would be impossible to communicate with him during the public road driving segment of the course, even with a sign language interpreter.

20. Mr. Hoback thought that an earphone voice amplification system would be unsafe and possibly illegal.

### Conclusions of Law

This Court has jurisdiction pursuant to 42 U.S.C. § 12101 *et seq.*

The Americans with Disabilities Act prohibits discrimination by public accommodations on the basis of a disability. The Act specifies that discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures" when the modifications are necessary to afford the services to individuals with disabilities "unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii). This section extends the Rehabilitation Act of 1973's prohibition against discrimination on the basis of disabilities to public accommodations and services operated by private entities. 29 U.S.C. § 794.

Both the text of the Americans with Disabilities Act and precedent interpreting the Rehabilitation Act forbid courts from requiring a fundamental alteration in a defendant's program to accommodate a handicapped individual. *Kohl by Kohl v. Woodhaven Learning Center,* 865 F.2d 930, 938 (8th Cir.), *cert. denied,* 493 U.S. 892, 110 S.Ct. 239, 107 L.Ed.2d 189 (1989). In *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Supreme Court found that a nursing school did not illegally discriminate against a rejected hearing impaired nursing applicant who could communicate only by reading lips and sign language by refusing to modify its program in such a way as to "dispense with the need for effective oral communication" with a nursing instructor. Even though the nursing applicant could read lips, the nature of the clinical phase of the training program required that students be able to "instantly follow" instructions. Justice Powell said that the Rehabilitation Act "imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Id.* at 413, 99 S.Ct. at 2370.

Mr. Breece contends that his hearing impairment can be accommodated by: 1) a driving simulator; 2) more direction or instruction before taking the wheel; 3) a sign language interpreter standing with him in the truck cab; or 4) a speaker on his shoulder near his less hearing impaired ear amplifying his instructor's voice.

Although Dr. Robinson, Mr. Breece's expert witness, testified that Mr. Breece's hearing impairment can be accommodated, Dr. Robinson's has had both significantly less tractor-trailer driving and teaching experience than Mr. Hoback. The testimony of Mr. Hoback is thus entitled to greater weight than Dr. Robinson's testimony.

Mr. Breece's hearing impairment cannot be accommodated without fundamentally altering the nature of Alliance's intensive training program of driving tractor-trailers on the road accompanied by an instructor. Expanded theoretical classroom training could not substitute for the actual road driving experience that is the integral part of Alliance's training program. A simulator based training program substituting for the road segment would also fundamentally alter the school's program because such a simulator lacks the fear element of driving a tractor trailer which is essential to graduating competent drivers from the training course.

In addition, nothing in the Americans with Disabilities Act requires "an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity

where such individual poses a direct threat to the health or safety of others." 42 U.S.C. § 12182(b)(3). A "direct threat" is a "significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." *Id.*

These provisions dealing with direct threats to public safety codify the standards requiring an "individualized inquiry" about the handicapped plaintiff expressed by the Supreme Court in *School Board of Nassau County v. Arline*, 480 U.S. 273, 286–288, 107 S.Ct. 1123, 1130–1131, 94 L.Ed.2d 307 (1987). 28 C.F.R. § 36.208 (1992). The finding of a direct threat is to be based on a reasonable judgment relying either upon current medical evidence *or* "on the best available objective evidence, to determine: the nature, duration and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk." 28 C.F.R. § 36.208(c).

Alliance made a reasonable judgment based on the best available objective evidence upon Mr. Breece's application and interview that any accommodation for his disability during the road driving segment would pose a direct threat to the safety of himself, his instructor, and the public at large on the public highway system. Mr. Breece could not possibly keep his eyes on the road, gauges, and mirrors and simultaneously watch a sign-language interpreter translating his teacher's instructions. The severity of Mr. Breece's hearing impairment would also make voice amplification devices useless in a noisy truck cab. Because Mr. Breece would be unable to communicate with his instructor in the cab, his presence on the road would constitute a direct threat to public safety.

Because accommodations could not be made to Alliance's tractor-trailer training program without fundamentally altering that program or posing a direct threat to public safety, the court concludes that the defendant has not violated the Americans with Disabilities Act by rejecting the plaintiff's application.