Jessica L. **WELLS**, Plaintiff–Appellant,

v.

**LESTER E. COX MEDICAL CENTERS, d/b/a Coxhealth,** Defendant–Respondent.

**No. SD 31752.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 9, 2012.

Kathryn E. Denner, St. Louis, MO, attorney for Appellant.

Bryan O. Wade, Springfield, MO, attorney for Respondent.

DON E. BURRELL, J.

In two points relied on, Jessica L. Wells ("Plaintiff") appeals the trial court's summary judgment in favor of Lester E. Cox Medical Center's Cox College of Nursing and Health Sciences ("College") on her claim that she was improperly terminated from College's nursing program under section 213.065[1] of the Missouri Human Rights Act ("MHRA"). Because whether Plaintiff, who has "a profoundly severe hearing loss," is "disabled" for purposes of the MHRA is a disputed material fact and because College failed to prove as a matter of law that the use of American Sign Language ("ASL") interpreters by Plaintiff in the clinical setting posed a "direct threat" to the safety of Plaintiff or others, we reverse the judgment and remand the case for further proceedings not inconsistent with this opinion.

## Applicable Principles of Review

Summary judgment is appropriate if the moving party has shown that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" Rule 74.04(c)(6).[2] "A 'genuine issue' that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts[.]" *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007).

> Summary judgment tests simply for the existence, not the extent of these genuine disputes. Therefore, where the trial court, in order to grant summary judgment, must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment, summary judgment is not proper.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 378 (Mo. banc 1993).

Our review is *de novo. Id.* at 376. "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* The moving party bears the burden of showing the lack of a genuine dispute of material fact, *ITT*, 854 S.W.2d at 378, and we view the record "in the light most favorable to [Plaintiff,] the party against whom judgment was entered" and "accord the non-movant the benefit of all reasonable inferences from the record." *Id.* at 376; *see also Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo.App. S.D.2007).

When, as here, the moving party is the defendant, that party

---

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

2. All rule references are to Missouri Court Rules (2012).

may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense. *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 58–59 (Mo. banc 2005); *see also Barekman*, 232 S.W.3d at 677. "If the trial court's judgment does not specify the basis upon which summary judgment was granted, we will uphold the decision if it was appropriate under any theory." *Horneyer v. City of Springfield*, 98 S.W.3d 637, 639 (Mo.App. S.D.2003).

### The Undisputed Material Facts [3]

Plaintiff has had a hearing deficit since the age of three, and her unaided hearing has continued to deteriorate. Plaintiff was enrolled in College's general education program during the Fall 2006 and Spring 2007 semesters. During those semesters, College provided Plaintiff with accommodations to compensate for her hearing loss in the form of note takers, tape recordings of class sessions, and ASL interpreters. Plaintiff was denied admission to College's Associate of Science in Nursing ("ASN") program [4] for the Fall 2006 semester because her grade point average was inadequate. Plaintiff was eventually admitted into the ASN program for the Fall 2007 semester.

During the Spring of 2007, College instructed one of its employees, Janice Lee, to conduct research on accommodations required for students like Plaintiff who were hearing impaired. The conclusion of Ms. Lee's research was that

> the deaf/hard-of-hearing individual can be successful as both a nursing student and as a nurse, although it may be difficult to achieve that success, based upon stereotypes and prejudice.... If the deaf student is strong-willed and has a great degree of fortitude, the student can be trained to enter many different areas of the nursing profession.

Before Plaintiff's classes began, she met with College administrators to discuss the accommodations she would need in order to participate in the ASN program. Plaintiff had received new hearing aids in 2007 that she thought would improve her hearing, and both College administrators and Plaintiff expected that she would be able to function in the clinical portions of the program without the assistance of an ASL interpreter based upon that anticipated improvement in her hearing.[5] During the

---

3. As required by our standard of review, our recitation of the undisputed material facts is given in the light most favorable to Plaintiff, the non-movant. *See ITT*, 854 S.W.2d at 376.

4. College's ASN program is a two-year program involving classroom and clinical training. A student who successfully completes the program receives an Associates of Science Degree in Nursing.

5. College asserts, and Plaintiff does not deny, that it did not anticipate that Plaintiff would require the assistance of an interpreter to complete the clinical portion of her Fall 2007 semester. It is undisputed that Plaintiff was admitted to College's nursing program with the understanding that she would be obtaining new hearing aids that were expected to improve her hearing. College additionally contends that it provided Plaintiff with ASL interpreters "so that [she] would not fall behind" while College evaluated her request for accommodations. College fails to provide us with an argument about why these admitted circumstances have any legal significance. If Plaintiff is "disabled" as defined by the MHRA, in the absence of proof of any relevant affirmative defense, College was required to provide Plaintiff with any reasonable accommodations necessary to allow her to participate in its program, including the use of

Fall 2007 semester, Plaintiff received volunteer note takers and tape recordings of class sessions, and she was provided an ASL interpreter during the classroom portions of the ASN program. The Missouri Department of Vocational Rehabilitation reimbursed College for 75% of the cost of the ASL interpreters, and it provided adapted equipment to allow Plaintiff to fully participate in her clinical exercises. Plaintiff also received an ASL interpreter during the first week of clinical rotations. After beginning her clinical rotations, Plaintiff requested that she be provided with ASL interpreters to assist her in the pre- and post-clinical conferences. These conferences were classroom-like group discussions that occurred among the students and their instructors before and after clinical sessions. With these accommodations, Plaintiff successfully completed the ASN program requirements for the Fall 2007 semester.

For the Spring 2008 semester, Plaintiff again requested note takers and ASL interpreters to assist her in completing her course and clinical work. On January 22, 2008, before the second semester of her ASN training was to begin, College dismissed Plaintiff from its ASN program. In its dismissal letter, College asserted that Plaintiff's "hearing loss would substantially limit (and in some cases completely limit) [Plaintiff]'s ability to safely perform clinical rotations."

On January 21, 2009, Plaintiff filed a petition in the Circuit Court of Greene County, alleging that College violated section 213.065 of the MHRA by "fail[ing] to provide Plaintiff with reasonable accommodations so that she could participate in its Nursing Program despite her disability." In its Answer, College asserted an affirmative defense that Plaintiff's request for interpreters "in the clinical setting pose[d] a direct threat to the health or safety of plaintiff and others, including hospital patients" ("direct threat" defense). On May 24, 2011, College filed its motion for summary judgment. After the trial court granted the motion and entered its summary judgment in favor of College on November 8, 2011, Plaintiff timely appealed.

## Analysis

### Point I—Disability

■ Plaintiff's first point asserts the trial court erred in granting summary judgment against her because College failed to establish that she could not participate in College's ASN program with or without reasonable accommodation. We agree.

The MHRA, in relevant part, declares,

· It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation, as defined in section 213.010 and this section, or to segregate or discriminate against any such person in the use thereof on the grounds of race, color, religion, national origin, sex, ancestry, or disability.

Section 213.065.2. In this case, the parties agree that: 1) College's nursing school is a "place of public accommodation" within the meaning of section 213.010(15) such that it is subject to the MHRA's prohibition on discrimination on the basis of disability; and 2) College dismissed Plaintiff from its

---

ASL interpreters. *See* 8 C.S.R. 60–3.060(1)(G)(2)(B) (specifically considering "readers or interpreters" as a kind of "reasonable accommodation" required under the MHRA in the employment context). All references to 8 C.S.R. 60–3.060 are to Missouri Code of State Regulations (2012).

ASN program because it refused to accommodate her hearing loss. College's motion for summary judgment asserted that Plaintiff could not prove as a matter of law that she "satisf[ies] the MHRA definition of 'disability'" under the uncontroverted material facts.

The MHRA defines "[d]isability" as:

a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job, utilizing the place of public accommodation, or occupying the dwelling in question.

Section 213.010(4). Reviewing courts have interpreted this statutory definition of disability as having two parts: 1) a person must have an impairment that limits major life activity; and 2) with or without reasonable accommodation, that impairment must not interfere with performing the job, utilizing the public accommodation, or occupying the dwelling. *See Lomax v. Daim-*lerChrysler Corp., 243 S.W.3d 474, 480 (Mo.App. E.D.2007); *Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 320–21 (Mo.App. W.D.2005).[6] It is this second part of the definition that lies at the heart of the parties' legal dispute.

■ "A 'reasonable accommodation' is an accommodation that does not impose 'undue financial and administrative burdens' on the employer or require fundamental alterations in the nature of the program." *Devor v. Blue Cross & Blue Shield of Kansas City*, 943 S.W.2d 662, 666 (Mo.App. W.D.1997) (quoting *Umphries v. Jones*, 804 S.W.2d 38, 41 (Mo.App. E.D. 1991)). "Whether any particular proposed accommodation is unreasonable is dependent upon the facts of each case." *Lomax*, 243 S.W.3d at 481.[7] College argues that allowing Plaintiff to continue using the accommodations she has successfully used in the past, specifically the use of an ASL translator in the clinical setting, constitutes a fundamental alteration of its ASN program. This is a conclusion for which College offers no underlying factual support.

---

6. Most reported Missouri cases concerning the MHRA arise in the employment context under section 213.055, which prohibits discrimination by an employer "because of the race, color, religion, national, origin, sex, ancestry, age or disability of any individual[.]" Section 213.055.1(1). Although we recognize the inherent differences between the employment context and the public accommodation context at issue in this case, the statutory definition of "disability," which applies to both sections, characterizes employment, public accommodations, and housing in the same manner. Section 213.010(4) (the disability must not "interfere with performing the job, utilizing the place of public accommodation, or occupying the dwelling"). Because Missouri MHRA cases in the employment context are thereby relevant to the question of whether Plaintiff was "disabled," we rely on them in conducting our analysis instead of turning to analogous federal case law.

7. A regulation promulgated under the MHRA sets forth the following non-exclusive list of factors that may be used in determining whether an accommodation is reasonable:

 A. The nature and cost of the accommodation needed;
 B. The size and nature of a business, including the number and type of facilities and the structure and compensation of the work force;
 C. The good faith efforts previously made to accommodate similar disabilities; and
 D. The ownership interest in the subject of the proposed accommodation including the authority to make the accommodation under the terms of any *bona fide* agreement such as a lease.

8 C.S.R. 60–3.060(1)(G)(3).

The "facts" College proffers in support of its claim that Plaintiff could not prove that she was "disabled" under the MHRA were: 1) "that her 'hearing loss would substantially limit (and in some cases completely limit) [her] ability to safely perform clinical rotations' "; 2) College

> did not believe that [P]laintiff would be able to function more independently and deal with increasingly more complex patients, as required in future clinical components of the ASN program without compromising her own safety or the safety of patients, faculty, and other students, due to her very severe hearing impairment which also impacts her speech;

and 3) College "believed that ASL interpreters in the clinical setting would fundamentally alter the ASN program, would seriously jeopardize patient safety, and were unlikely to enhance [P]laintiff's ability to successfully participate in the ASN program." These asserted "beliefs" about future events, unsupported by reference to any existing facts, are not the stuff of which meritorious summary judgments are made.

The uncontroverted material facts are that Plaintiff utilized an ASL interpreter during the entire first week of her clinical rotations and during the pre- and post-conference clinical discussions. College's Statement of Material Facts is devoid of any reference to events that occurred during that time period as support for its claim that the use of an ASL interpreter "fundamentally alter[ed] the ASN program[.]"

■ Instead, College refers us to *Southeastern Cmty. College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), as support for its claim. But the outcome in *Southeastern* was dictated by the provisions of the Rehabilitation Act of 1973. When deciding claims under the MHRA, we look to *applicable* federal law. *Brady v. Curators of Univ. of Missouri*, 213 S.W.3d 101, 113 (Mo.App. E.D.2006) ("If the wording in the MHRA is clear and unambiguous, then federal case law which is contrary to the plain meaning of the MHRA is not binding"). *See also Smith v. Hy–Vee, Inc.*, 622 F.3d 904, 907 (8th Cir. 2010) (applying Missouri law to a MHRA discrimination claim). As our cases have noted, the protections provided by federal statutes like the Rehabilitation Act or the more recent Americans with Disabilities Act ("ADA") are not identical to those provided by the MHRA. *See id., Medley*, 173 S.W.3d at 320; *Umphries*, 804 S.W.2d at 41.

■ In *Southeastern*, the Court rejected the claim that a professional nursing program was required to modify its program as necessary to accommodate the plaintiff's hearing deficit because the requested modifications—which included dispensing with some courses altogether—were inconsistent with the Rehabilitation Act itself.[8] 442 U.S. at 400–06, 411–12, 99 S.Ct. 2361. Because the requested changes to the curriculum would have "substantially lowered" the program's academic standards, the Court found that such modifications were not required in

---

8. However, the Court went on to note that under certain circumstances or in a different context, such accommodations might not always be inconsistent with the meaning of the Act and could amount to discriminatory practice.

> Technological advances can be expected to enhance opportunities to rehabilitate the handicapped or otherwise to qualify them for some useful employment. Such advances also may enable the attainment of these goals without imposing undue financial and administrative burdens upon a State. Thus, situations may arise where a refusal to modify an existing program might become unreasonable and discriminatory. *Southeastern*, 442 U.S. at 412–13, 99 S.Ct. 2361.

order to comply with the Rehabilitation Act's prohibition on discrimination. *Id.* at 413, 99 S.Ct. 2361.

Unlike the Rehabilitation Act, the MHRA imposes an affirmative obligation to provide reasonable accommodations if the impairment, thus accommodated, does not interfere with the individual's ability to utilize the public accommodation at issue— here, College's ASN program. *See* section 213.010(4); *Umphries,* 804 S.W.2d at 41 ("Missouri, unlike the federal law, makes the question of reasonable accommodations a part of the test of whether a [disability] exists"). College did not assert any uncontroverted material facts demonstrating how its provision of an ASL interpreter "substantially lowered" its ASN program's academic standards.[9] There is a significant distinction between requesting assistance in meeting existing standards and requesting that the standards themselves be adjusted downward. *See id. Southeastern* is inapposite.

The undisputed, historical facts are that with the assistance of note takers, adapted equipment, and ASL interpreters, Plaintiff utilized College's public accommodation by participating in and completing one semester of its ASN program. Although the fact-finder may not ultimately choose to draw it, the reasonable inference from these undisputed facts—as viewed in the light most favorable to the non-movant Plaintiff—is that her past success proves her ability to utilize the ASN program in its current form with reasonable accommodation. Plaintiff's first point is granted.

### Point II—Defendant's "Direct Threat" Affirmative Defense

Because the trial court did not specify the grounds for its judgment, we must determine whether there was any supportable basis for it. *Horneyer,* 98 S.W.3d at 639. College would still be entitled to summary judgment in its favor if the uncontroverted material facts established that it was entitled to prevail as a matter of law on each element of its direct threat defense. *See Ameristar Jet Charter,* 155 S.W.3d at 58–59.

■ Plaintiff's second point claims the trial court erred in granting summary judgment based on College's direct threat defense because College "failed to present objective evidence to back up its subjective belief" that "Plaintiff's participation in [College's ASN] program would pose an unspecified threat to safety[.]" We agree.

We first note that the MHRA does not explicitly provide for a direct threat defense or any other affirmative defense. The regulations promulgated under the statute seem to imply that one is available,

---

9. College relies on other cases in support of its position that are inapplicable for the same reason. In *Amir v. St. Louis Univ.,* 184 F.3d 1017 (8th Cir.1999), the plaintiff, a student with a mental disability, brought a disability claim under the ADA when the defendant refused to accommodate him by allowing him to complete course requirements at a different institution, allowing him to be reassigned to a different instructor, and giving him a passing grade. *Id.* at 1028. The court concluded that the defendant's decision to deny those requests was reasonable within the "province concerning academic matters" that should not be invaded in the absence of evidence of discrimination. *Id.* at 1029. Similarly, in *Mershon v. St. Louis Univ.,* 442 F.3d 1069 (8th Cir.2006), the court concluded that the plaintiff, a wheelchair bound student with cerebral palsy, had not established that his requested accommodations were reasonable where, even with his requested accommodations, he would have been unable to achieve the academic requirements for admission into the defendant's graduate program. *Id.* at 1076–78. In both of these cases, the students were unable to comply with academic standards. Here, Plaintiff has demonstrated that with some accommodation she has thus far been able to meet the existing College ASN program requirements.

at least in the employment context, if "placing the disabled person in the job would pose a demonstrable threat of harm to the health and safety of others." 8 C.S.R. 60–3.060(1)(F)(3). The ADA provides a similar defense if allowing the disabled individual to participate or benefit from the public accommodation would "pose[ ] a direct threat to the health or safety of others." 42 U.S.C. section 12182(b)(3) (1990); *see also* 29 U.S.C. section 705(20)(D) (2010) (providing a similar, but more limited, "direct threat" defense under the Rehabilitation Act).

Assuming, without deciding, that a direct threat defense similar to that available under analogous federal laws is available under the MHRA (a matter we do not reach), College failed to prove that it was entitled to prevail on such a defense. *See Missouri Comm'n on Human Rights v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 168 (Mo.App. W.D.1999) ("When Missouri has not addressed an issue under the MHRA, Missouri courts may look to federal decisions interpreting similar civil rights laws").

 The ADA's "direct threat" defense balances "the importance of prohibiting discrimination against individuals with disabilities while protecting others from significant health and safety risks[.]" *Bragdon v. Abbott*, 524 U.S. 624, 649, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). A "direct threat" under the ADA is "a *significant risk* to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by

the provision of auxiliary aids or services." 42 U.S.C. section 12182(b)(3) (emphasis added). As the Supreme Court explained in *Bragdon*,

Because few, if any, activities in life are risk free, [*School Bd. of Nassau Cnty., Florida v.*] *Arline* [480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) ] and the ADA do not ask whether a risk exists, but whether it is significant.

The existence, or nonexistence, of a significant risk must be determined from the standpoint of the person who refuses the treatment or accommodation, and the risk assessment must be based on medical or other objective evidence.

524 U.S. at 649, 118 S.Ct. 2196. Evaluating a "direct threat" defense "involve[s] an individualized inquiry into the significance of the threat posed." *Doe v. County of Centre, PA*, 242 F.3d 437, 449 (3d Cir. 2001).

The uncontroverted material "facts" College asserts in support of its direct threat defense do not constitute the type of particularized evidence necessary to prevail on such a defense as a matter of law.[10] College offered nothing more than its subjective belief that the use of an ASL interpreter in the clinical setting posed a direct safety threat. The *Bragdon* Court reiterated that evidence of a "direct threat" must be supported by something more than mere belief, "even if maintained in good faith[.]" 524 U.S. at 649, 118 S.Ct. 2196. As earlier noted, College asserts no facts related to Plaintiff's use of an ASL

---

**10.** The totality of College's support for its direct threat defense in its Statement of Uncontroverted Material Facts is:

33. [College] did not believe that [P]laintiff would be able to function more independently and deal with increasingly more complex patients, as required in future clinical components of the ASN program without compromising her own safety or the safety of patients,

faculty, and other students, due to her very severe hearing impairment which also impacts her speech.

34. [College] believed that ASL interpreters in the clinical setting would fundamentally alter the ASN program, would seriously jeopardize patient safety, and were unlikely to enhance [P]laintiff's ability to successfully participate in the ASN program.

interpreter in her first semester of clinical rotations that would allow a fact finder to find that such a threat existed. More importantly, for purposes of summary judgment, a reasonable inference favorable to Plaintiff is that her successful completion of the first semester while using an ASL interpreter during her clinical rotations proved the absence of any such threat.

College cites *Breece v. Alliance Tractor–Trailer Training II, Inc.,* 824 F.Supp. 576 (E.D.Va.1993), in support of its claim that Plaintiff's hearing deficit posed a direct threat of harm to others. In *Breece,* a plaintiff with a hearing deficit similar to Plaintiff's applied for and was denied acceptance into the defendant's truck-driver training program. *Id.* at 577–78. The court found that the accommodations necessary to allow the plaintiff to participate would have required a fundamental alteration of the training program, and based upon the objective evidence adduced,

> any accommodation for his [hearing impairment] during the road driving segment would pose a direct threat to the safety of himself, his instructor, and the public at large on the public highway system. [Plaintiff] could not possibly keep his eyes on the road, gauges, and mirrors and simultaneously watch a sign-language interpreter translating his teacher's instructions.

*Id.* at 579–80.

The *Breece* court concluded that the defendant based its decision to deny plaintiff entrance to the program on objective evidence. *See id.* at 580 (the defendant "made a reasonable judgment based on the best available objective evidence"). College's motion for summary judgment fails to assert such evidence. Assuming, *arguendo,* that a direct threat defense is available under the MHRA, College failed to prove that it was entitled to prevail on it as a matter of law. Point II is also granted.

The judgment is reversed and the matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

JEFFREY W. BATES, J., and DANIEL E. SCOTT, P.J., concurs.