

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JOSE LOPEZ, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD85931 |
| | ) | |
| CEDAR FAIR, L.P., | ) | Opinion filed:  September 17, 2024 |
| | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI**
**THE HONORABLE DAVID P. CHAMBERLAIN, JUDGE**

Division One:  Edward R. Ardini, Jr., Presiding Judge, Mark
D. Pfeiffer, Judge and Cynthia L. Martin, Judge

Jose Lopez ("Lopez") appeals the judgment of the Circuit Court of Clay County,

entered after a jury trial, finding in favor of Respondent Cedar Fair, L.P. ("Cedar Fair") on

Lopez's claim for disability discrimination in a place of public accommodation under the

Missouri Human Rights Act. Lopez raises eleven points on appeal. For the reasons stated

below, we affirm the judgment of the trial court.

## Factual and Procedural Background[1]

Cedar Fair owns and operates the amusement parks Worlds of Fun and Oceans of Fun. Lopez—who is blind—has alleged in this action that Cedar Fair discriminated against him based on his disability on two occasions in the summer of 2017. Specifically, he asserts that Cedar Fair discriminated against him by failing to provide him an accommodation when he rode a waterslide, and by requiring he use an accommodation to ride the bumper cars.

The waterslide incident occurred on an unknown date in June 2017. Lopez and his personal assistant ("Assistant") and her daughter ("Daughter") attended Oceans of Fun. Lopez and Daughter rode the Aruba Tuba waterslide. In order to ride the Aruba Tuba, a guest must retrieve an innertube and climb steps to the top of a platform, where an Oceans of Fun employee dispatches the guest down the slide on the innertube. When the guest completes the slide and enters the catch pool, the next guest at the top of the platform is dispatched down the slide, arriving 30 to 40 seconds later.

Daughter assisted Lopez in retrieving an innertube and accompanied him up the steps. According to Lopez, he told the dispatcher that he was blind and to let the lifeguards know that he would be coming down and would like some assistance, and the dispatcher spoke "to somebody and [said] that there was a blind patron" that "would need some

---

[1] "On appeal, in a jury-tried case, we review the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, disregarding evidence to the contrary." *Rosales v. Benjamin Equestrian Ctr., LLC*, 597 S.W.3d 669, 672 n.2 (Mo. App. W.D. 2019).

assistance getting out of the pool."[2] Lopez was dispatched down the slide and landed in the catch pool, where he floated on his innertube without any lifeguard coming to assist him. An unknown park guest asked Lopez if he needed help, and he asked her to direct him to the lifeguard, which she did. While Lopez was asking the lifeguard why she did not come to guide him to the pool's exit, Daughter—who had been dispatched down the slide immediately after Lopez—joined Lopez and assisted him out of the pool.[3]

The bumper car incident occurred the following month. The bumper car ride at Worlds of Fun is called the Autobahn, and it is located in the Europa section of the park. In this attraction, the rider drives a car around an oval-shaped, one-way track, which has a center island. Posted around the track are one-way signs and signs with arrows indicating the direction riders are to drive. There is also signage instructing riders to avoid head-on collisions. Before every Autobahn ride begins, the ride operator announces the following: "Welcome to the Autobahn. This is a one-way track. So, please, follow the arrows. While riding, avoid all head-on collisions."

---

[2] The Aquatics Director for Oceans of Fun testified that a dispatcher could not call a lifeguard because there was no phone on the balcony where the lifeguard was positioned and a lifeguard could not take a call while scanning the pool. She further testified that Oceans of Fun would never allow an on-duty lifeguard to leave her post for the purpose of guiding a guest to the pool's exit.

[3] Pursuant to Oceans of Fun policy, if a guest informs the dispatcher that he is blind and needs assistance exiting the pool, the dispatcher should determine if the guest has a companion. If the guest does, the dispatcher should have the companion ride down first so the companion can assist the guest in exiting the pool. If the guest has no companion, the dispatcher should contact a supervisor to work out an accommodation for the guest.

Each ride at Worlds of Fun has rider criteria and a Ride Admission Policy, which was developed in consultation with industry experts, manufacturer guidelines, past experience, and Cedar Fair's evaluation of the ride. The rider criteria and Ride Admission Policy are outlined in the Guest Assistance Guide; this guide can be viewed on the Worlds of Fun website and a copy can be obtained at the park, where it is available in Braille. The rider criteria for the Autobahn requires guests to have "appropriate observed behavior indicating a willingness and ability to participate and/or follow rider requirements." If a guest does not have the "appropriate observed behavior indicating a willingness and ability to participate and/or follow rider requirements," the guest must be accompanied by a supervising companion. Worlds of Fun employees are required to follow and cannot deviate from the Ride Admission Policy and rider criteria.

On July 4, 2017, Lopez, Assistant, and Daughter attended Worlds of Fun. Lopez wanted to ride the Autobahn, but neither Assistant nor Daughter was able to ride with him. Daughter assisted Lopez into a bumper car, then spoke with the Autobahn's operator ("Ride Operator"). Daughter asked if Lopez could ride by himself even though he was blind, and Ride Operator responded that he could not. In accordance with her training, Ride Operator called for a supervisor. Two employees responded to this call: the Operations Supervisor of Rides ("Ride Supervisor") and a park ambassador ("Park Ambassador").[4] After being advised of the situation, Ride Supervisor and Park Ambassador confirmed that Lopez required a supervising companion to ride the Autobahn. Because neither Assistant

---

[4] The role of a park ambassador is "to help guests with whatever they need[]" and ensure they have "the best time ever."

4

nor Daughter could ride with Lopez, Park Ambassador offered to ride with him. Lopez accepted Park Ambassador's offer, and drove the bumper car while she accompanied him.

The following month, Lopez filed a Charge of Discrimination with the Missouri Commission on Human Rights. After receiving notice of his right to sue, he filed the present action, claiming Cedar Fair discriminated against him in a place of public accommodation in violation of the Missouri Human Rights Act ("MHRA"), section 213.065, RSMo.[5] Lopez alleged that he "requested a reasonable accommodation for his medical condition prior to riding the Oceans of Fun waterslide attraction," and that Cedar Fair "failed to provide [him] with a reasonable accommodation at the end of the waterslide attraction by neglecting to assist him out of the water." He also alleged that Cedar Fair "forced [him] to acquire unnecessary accommodation in order to ride the bumper car attraction, and openly discriminated against him while providing said unnecessary accommodation." Lopez sought actual and punitive damages.

The matter proceeded to a four-day jury trial, at which Lopez and numerous Cedar Fair employees testified. At the close of Lopez's case, Cedar Fair moved for a directed verdict, and the trial court granted it in part, directing a verdict in Cedar Fair's favor on Lopez's claim for punitive damages. At the conclusion of the trial, the jury returned a verdict in favor of Cedar Fair. Lopez appeals, asserting claims of evidentiary error,

---

[5] The MHRA was amended in 2016, but the amendments did not become effective until August 28, 2017, after these alleged incidents of discrimination occurred. Accordingly, we apply the pre-amendment version of the MHRA. *See Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 794-95 (Mo. App. W.D. 2018). All references to Missouri statutes are to RSMo 2016.

5

instructional error, error in allowing improper closing argument, and error relating to the issue of punitive damages.

Additional facts will be set forth in our analysis.

## Point I – Admission of Safety-Related Evidence

Lopez's first point on appeal asserts the trial court erred in allowing Cedar Fair to present evidence relating to the "safety requirements of the Autobahn."

"On appellate review, the issue is not whether the evidence was admissible or should have been excluded, it is whether the trial court abused its discretion in admitting or excluding the evidence." *Ostermeier v. Prime Props. Invs. Inc.*, 589 S.W.3d 1, 10 (Mo. App. W.D. 2019). "A circuit court has broad discretion in determining the admission of evidence." *Id.* (internal marks omitted). "A court abuses its discretion only when the court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal marks omitted).

Lopez contends the trial court erred in admitting evidence relating to the "safety requirements of the Autobahn" in that the evidence was not logically relevant as it did not "make any fact relevant to any of the pleaded claims or defenses more or less probable." Specifically, he contends the trial court erred in admitting the following evidence: the Ride Admission Policy for the Autobahn, focusing on the safety requirements that riders drive in one direction and avoid head-on collisions; employee testimony claiming these standards were based upon the manufacturer's guidelines about how to safely operate the ride; Cedar Fair's admission that the purpose of the Ride Admission Policy was to enable a guest to

ride safely; evidence about safety signage posted around the Autobahn; and testimony about the risks of people not following the safety rules. We find, however, that the trial court did not abuse its discretion in admitting this evidence, as it was relevant to the first element of Lopez's MHRA claim; specifically, whether Lopez had a "disability" as defined by the MHRA.

The elements of a public accommodation discrimination claim under the MHRA are:

> (1) plaintiff is a member of a class protected by section 213.065;
>
> (2) plaintiff was discriminated against in the use of a public accommodation (as defined by section 213.010); and
>
> (3) plaintiff's status as a member of a protected class was a contributing factor in that discrimination.

*R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 425 (Mo. banc 2019) (internal footnote omitted).

As to the first element, "disability" is a protected class. *See* § 213.065.2. To establish that he has a "disability" as defined by the MHRA, and thus is a member of that class, Lopez must show he has "a physical or mental impairment which substantially limits one or more of [his] major life activities, . . . which with or without reasonable accommodation does not interfere with . . . utilizing the place of public accommodation[.]" § 213.010(4). "The MHRA makes the question of whether" the plaintiff can utilize the place of public accommodation "with or without reasonable accommodation a part of the test to determine whether [the plaintiff] is disabled," and the plaintiff must establish this element as part of his prima facie case. *See Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315,

7

320-21 (Mo. App. W.D. 2005).[6] Because Lopez's theory was that Cedar Fair discriminated against him by *requiring* he use an accommodation to ride the Autobahn, to satisfy the first element of his claim, Lopez had to establish that he could utilize the Autobahn without a reasonable accommodation; put another way, that his blindness did not interfere with his use of the Autobahn.

The challenged evidence was probative on this issue. In order to ride the Autobahn, Lopez was required to have the "appropriate observed behavior," which included the ability to follow the rules of the ride. Evidence relating to safety signage, the Ride Admission Policy, the safety requirements of the Autobahn, the purposes behind these requirements, and the risks of not following the rules of the Autobahn were relevant to determine whether Lopez could utilize the Autobahn without a reasonable accommodation, i.e., whether Lopez had a "disability" as defined by the MHRA.

Lopez argues that safety-related evidence was only relevant to a "direct threat" affirmative defense, and because Cedar Fair did not raise this defense, Cedar Fair was not entitled to present such evidence. But as described above, safety-related evidence was relevant to the first element of Lopez's MHRA claim. Moreover, contrary to Lopez's argument, a "direct threat" defense had no place in this litigation. The "direct threat" defense is an affirmative defense set forth in the federal Americans with Disabilities Act

---

[6] Lopez contends that *Medley* is "unpersuasive" because it involved a claim of employment discrimination instead of discrimination in a public accommodation. However, there is but one definition of "disability" in the MHRA, and it applies to both employment and public accommodation discrimination claims. *See* § 213.010(4). Thus, we find *Medley* applicable on this issue.

8

("ADA"); in essence, it allows the defendant to avoid liability if permitting the disabled individual to participate in or benefit from the public accommodation would pose a direct threat to the health or safety of others. *See* 42 U.S.C. § 12182(b)(3). Unlike its federal counterpart, "the MHRA does not explicitly provide for a direct threat defense." *Wells v. Lester E. Cox Med. Ctrs.*, 379 S.W.3d 919, 926 (Mo. App. S.D. 2012).[7] However, assuming a "direct threat" defense could theoretically be raised to defeat an MHRA claim—a holding we do not reach —the defense nonetheless would have been inapplicable under the facts of this case because Cedar Fair provided Lopez with an accommodation.

The "direct threat" defense to a public accommodation discrimination claim is set forth in the ADA as follows:

> Nothing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others. The term "direct threat" means a significant risk to the health or safety of others that *cannot be eliminated by a modification of policies, practices, or procedures by the provision of auxiliary aids or services.*

42 U.S.C. § 12182(b)(3) (emphasis added). Thus, a "direct threat" defense would only be available where the defendant asserts that the risk to the health or safety of others could not be eliminated by providing the plaintiff an accommodation. *See Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996) ("there is no direct threat defense if

---

[7] *Wells* is the only other Missouri appellate opinion to consider the application of a "direct threat" defense in an MHRA case. In *Wells*, the Southern District "[a]ssum[ed], without deciding, that a direct threat defense similar to that available under analogous federal laws is available under the MHRA." 379 S.W.3d at 927. The Southern District concluded that, assuming the defense were available, the defendant "failed to prove that it was entitled to prevail on such a defense." *Id.*

9

the employer could have made 'reasonable accommodation[s]'"); *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007) (a "direct threat" is "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation" (internal marks omitted)); *Baldwin v. Wilkie*, No. 5:15-cv-594-Oc-34PRL, 2019 WL 480503, at *16 (M.D. Fla. Feb. 7, 2019) ("a 'direct threat' analysis arises when an employer has taken an adverse employment action against a disabled employee and raises as a defense that no reasonable accommodation was available because the employee posed a direct threat"). Thus, even if a "direct threat" defense were available in an MHRA case, it would have made no sense for Cedar Fair to raise this defense to Lopez's claim of discrimination, when Cedar Fair provided an accommodation to Lopez and he alleges the provision of the accommodation was discrimination.[8]

In sum, we find the trial court did not abuse its discretion in admitting evidence relating to the safety requirements of the Autobahn. Point I is denied.

## Point II – Exclusion of Videos

In his second point, Lopez asserts the trial court erred by excluding three cell phone videos showing individuals riding the Autobahn. Lopez contends that "[t]he videos, taken on [his] behalf, clearly show riders driving the opposite direction from the one-way arrows and getting into head-on collisions," and "[t]his shows that [Cedar Fair's] purported basis

---

[8] Lopez's claim is thus distinguishable from the plaintiff's claim in *Wells*, where a nursing student with a hearing disability filed an MHRA claim against her college after it refused to provide her requested accommodation of a sign language interpreter and dismissed her from nursing school. 379 S.W.3d at 923. In response, the college raised a "direct threat" defense, asserting the plaintiff's requested accommodation would pose a direct threat to the health or safety of the plaintiff and others, including patients. *Id.*

for discriminating against [Lopez] . . . is a pretext; the rules are not enforced and merely an excuse to discriminate." However, we find no reversible error: Lopez failed to demonstrate he suffered prejudice from the exclusion of these videos, as they were cumulative to other evidence admitted at trial.

"We will reverse for evidentiary error only if the erroneous evidentiary ruling was prejudicial." *Dalbey v. Heartland Reg'l Med. Ctr.*, 621 S.W.3d 36, 51 (Mo. App. W.D. 2021). "To establish prejudice sufficient to justify reversal, the appellant must show that the erroneous exclusion of evidence materially affected the merits of the action," in other words, that the trial court's error "affected the outcome of the trial." *Id.* (internal marks omitted).

Lopez did not establish that the exclusion of these videos affected the outcome of his trial. Lopez contends the videos show that the Autobahn safety rules were not enforced. But there was other evidence admitted at trial that supported this contention, including testimony of Cedar Fair employees and a video exhibit introduced by Lopez.

Ride Operator testified about "rule enforcement" at the Autobahn. She stated that riders violate the "one-way" rule and rule prohibiting head-on collisions, and when that happens, she "tr[ies] to talk to them over the PA system" or signal to them if they can't hear her. She testified that if the rider continues to break the rules, "after two or three times," she stops the ride. She testified that if rule-breaking "happens, [she's] not going to allow it, but if it does happen, it happens." Ride Operator further testified that she "cannot hit the red button stopping the ride every 15 seconds that a head-on collision happens, because we're not trying to stop the ride, we're trying to give them an enjoyable ride." The

11

jurors could have concluded from this testimony that the Autobahn rules were not strictly enforced.

Additionally, the jury viewed video evidence showing Autobahn riders breaking rules without admonishment. Lopez offered—and the trial court admitted—a cell phone video taken of him riding the Autobahn with Park Ambassador on July 4th. During the testimony of both Park Ambassador and Ride Supervisor, Lopez's counsel played the video and pointed to two drivers who had a "nose-to-nose" collision. Lopez's counsel asked Park Ambassador and Ride Supervisor about the incident: neither remembered Ride Operator admonishing those riders, and Ride Supervisor stated that he did not hear in the video Ride Operator telling the riders over the PA system to stop. Lopez's counsel used this video evidence to argue in closing, "how can they come in here and tell you that [the rule prohibiting head-on collisions] is a requirement when it's happening in the very video," and, "the one-way. You again can see in the video . . . people aren't going in the one-way direction. And it's fine, they're not doing anything about it."

"Cumulative evidence is additional evidence that reiterates the same point." *St. Louis Univ. v. Geary*, 321 S.W.3d 282, 292 (Mo. banc 2009). "A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence." *Id.* The three excluded videos at issue here reiterate "the same point" as the above-described evidence, and were, therefore, cumulative. Accordingly, Lopez has failed to establish the exclusion of these videos resulted in prejudice. *See Baker v. Baker*, 690 S.W.3d 616, 620 (Mo. App. S.D. 2024) ("No prejudice inures where, as here, the excluded evidence is cumulative to other evidence admitted at trial."); *Ratcliff v. Sprint*

12

*Mo., Inc.*, 261 S.W.3d 534, 550 (Mo. App. W.D. 2008) (the trial court's exclusion of relevant evidence was harmless, and thus the plaintiff suffered no prejudice, where the excluded evidence was cumulative to other evidence admitted at trial).

Point II is denied.

**Points III and IV – Evidence and Argument Relating to the
Amusement Ride Safety Act**

In his third and fourth points, Lopez asserts the trial court erred in admitting evidence and allowing argument related to the Amusement Ride Safety Act ("ARSA"), section 316.200 *et seq.* Pertinent to this appeal, ARSA requires that an amusement ride be inspected annually by a qualified inspector, and the inspection "shall be conducted at a minimum to meet the manufacturer's or engineer's specifications and to follow the applicable national standards." § 316.210.1(1), .2. The inspection report must be filed with the Missouri Department of Public Safety, and the amusement ride cannot be operated unless that department has issued a "state operating permit." § 316.210.1(3), (4).

ARSA also provides that a passenger on an amusement ride shall "[o]bey the reasonable safety rules posted" and "oral instruction for an amusement ride," and "[r]efrain from acting in any manner that may cause or contribute to injuring such passengers or others." § 316.230.1(1), (2). "Any person who violates [these provisions] shall be guilty of a class A misdemeanor." § 316.230.2.

13

*Evidence Relating to ARSA*

In his fourth point,[9] Lopez asserts the trial court erred in admitting evidence relating to ARSA because it was not logically relevant, in that ARSA did not constitute a defense to Lopez's claims or abrogate Cedar Fair's liability. However, we disagree that this evidence was irrelevant, and further find Lopez has failed to demonstrate it was prejudicial.

The jury heard the ARSA-related evidence that Lopez challenges in this point during the testimony of two Worlds of Fun managerial employees: The Manager of Rides & Parks Services ("Manager of Rides") and the Electrical Maintenance Manager.

During her testimony, Manager of Rides read the following paragraph from the Worlds of Fun Guest Assistance Guide, which—as previously stated—is available online and at the park: "Please Ride Safely. Under the State of Missouri, Rider Responsibility Law, RSMO 316.230 requires that riders must obey all warnings regarding this ride and behave in a manner that will not cause or contribute to injury to themselves or to others. Failure to comply is a misdemeanor." She also testified about the annual Autobahn inspection required by the state, including that during the inspection, the inspector checks the signage, the script of oral instructions given by the ride operator, the bumper cars, and the track. Electrical Maintenance Manager testified about the inspection as well, stating that "[t]he State wants to make sure that we, if it requires signage, we have to put the signs up. They want to make sure we're following the manufacturing guidelines." He testified

---

[9] For ease of analysis, we address the ARSA-related points out of order.

that the state ensures Cedar Fair is "following manufacturer safety guidelines" before it issues its annual permit to operate the ride.

We find no abuse of discretion in the admission of this evidence. As discussed above in Point I, safety-related evidence was relevant to the issue of whether Lopez had a "disability" under the MHRA. He was required to prove that his blindness did not interfere with him utilizing the Autobahn and he did not require an accommodation to drive a bumper car. In order to utilize the Autobahn, Lopez had to demonstrate he could obey the safety signage and rules of the ride. Evidence related to the safety and ride requirements imposed by ARSA provided further context for Cedar Fair's rider criteria and Ride Admission Policy.

Moreover, Lopez fails to explain how the admission of evidence relating to the ride requirements and annual inspection mandated by ARSA "caused outcome-determinative prejudice materially affecting the merits of the action," as necessary to obtain reversal. *See Piers v. Dep't of Corrs.*, 688 S.W.3d 65, 73 (Mo. App. W.D. 2024); *see also Basta v. Kan. City Power & Light Co.*, 456 S.W.3d 447, 455 (Mo. App. W.D. 2014) ("When reviewing matters involving admission of evidence, we review for prejudice, not mere error"). Lopez's failure to establish prejudice from the admission of this evidence provides an additional basis to deny this claim of error.

Point IV is denied.

*Closing Argument Related to ARSA*

In his third point, Lopez asserts the trial court erred in allowing Cedar Fair to misstate the law about ARSA during closing argument.

15

We review this claim of error for abuse of discretion. *See Hill v. SSM Health Care St. Louis*, 563 S.W.3d 757, 763 (Mo. App. E.D. 2018). "The permissible field of argument is broad, and so long as counsel does not go beyond the evidence and the issues drawn by the instructions, or urge prejudicial matters, or a claim or defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments." *Id.* (internal marks omitted). Thus, "[t]he court should exclude only those statements that misrepresent the evidence or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury." *Id.* at 764. In reviewing whether the trial court abused its discretion in overruling an objection during closing argument, we determine whether the objectionable comment was "plainly unwarranted and clearly injurious to [the opposing party]" when "interpreted in light of the entire record." *Minze v. Mo. Dep't of Pub. Safety*, 541 S.W.3d 575, 581 (Mo. App. W.D. 2017) (reviewing whether counsel misstated the law during closing argument in an MHRA case).

Lopez argues defense counsel misstated the law during closing argument when he stated the following:

> Bumper cars, yeah, we have to have a rule to avoid head-on collisions. Our manufacturing guidelines say that. You've heard time and time again about the Ride Admission Policy that we have. It's based on the manufacturing guidelines as a bare minimum. . . . And we're required by the State of Missouri to follow the manufacturing guidelines. It's the law.
>
> . . .
>
> He could not follow the rules, the safety rules that are required by the manufacturing guidelines. He could not apply [sic] with Missouri law.

16

Lopez contends Cedar Fair "argued that the ARSA required them to follow the manufacturer operation guidelines for their rides." He asserts "[t]his misrepresents [section 316.210]" because the statute only requires that the annual ride "*inspection* must meet the manufacturer's specifications"; it "says nothing about a requirement to follow manufacturing guidelines as to operation of a ride."

First, we note that defense counsel never identified ARSA or made any reference to a statutory requirement in Cedar Fair's closing argument. He argued that Cedar Fair was "required by the State of Missouri to follow the manufacturing guidelines. It's the law." And we cannot say this argument was plainly unwarranted given the testimony of Electrical Maintenance Manager that the state would not issue its annual permit to operate the Autobahn until it ensured Cedar Fair was "following manufacturer safety guidelines." A reasonable inference from Electrical Maintenance Manager's testimony was that the state mandated Cedar Fair follow the manufacturer guidelines when operating the Autobahn. *See Peterson v. Progressive Contractors, Inc.*, 399 S.W.3d 850, 856 (Mo. App. W.D. 2013) ("The trial court is afforded wide latitude in closing argument regarding the arguing of facts and inferences drawn from the evidence."). Considering this testimony, we do not find the challenged comments in Cedar Fair's closing argument "plainly unwarranted."

Moreover, Lopez has not demonstrated that Cedar Fair's alleged misstatement of the law during closing argument was "clearly injurious" to him. "For, as a general principle, even if counsel misstates the law in closing argument, as long as the trial court properly instructs the jury, we will rarely find reversible error." *Minze*, 541 S.W.3d at 583. As discussed more fully later in this opinion, Lopez has not demonstrated that any instructional

17

error occurred. Accordingly, we find no prejudice resulted from Cedar Fair's alleged misstatements during closing argument. *See id.*

For these reasons, we find the trial court did not abuse its discretion in overruling Lopez's objection to Cedar Fair's closing argument. Point III is denied.

### Point V – Admission of Evidence that Assistant Was Paid by the State of Missouri

In his fifth point, Lopez asserts the trial court erred in admitting evidence that Assistant was paid by the state, claiming such evidence was irrelevant. However, Lopez advances no argument that the admission of this evidence resulted in prejudice sufficient to warrant reversal. "[W]e will not reverse a judgment unless we find that an error materially affected the merits of the action." *Reed v. Kan. City Sch. Dist.*, 504 S.W.3d 235, 240 (Mo. App. W.D. 2016) (internal marks omitted). Lopez's failure to demonstrate that the admission of this evidence affected the outcome of his trial is fatal to his point on appeal. *See McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 185 (Mo. App. W.D. 2012) (denying point on appeal relating to erroneous exclusion of evidence where the appellant "fail[ed] to articulate and demonstrate outcome-determinative prejudice"); *see also Reed*, 504 S.W.3d at 247 (the appellant failed to show prejudice sufficient to warrant reversal because she did not "establish that a different evidentiary ruling would have changed the outcome of the trial").

Point V is denied.

**Points VI, VII, VIII, and IX – Jury Instructions**

In his next four points, Lopez asserts the trial court erred in giving Instructions 8 and 11 (the verdict directors) in that they "failed to correctly characterize the substantive law." Instruction No. 8 related to the bumper car incident; Lopez claims that paragraphs third and fourth of this instruction misstated the law. Instruction No. 11 related to the waterslide incident; Lopez similarly claims that paragraphs third and fourth of this instruction misstated the law. However, we do not address the merits of Lopez's arguments because Lopez did not object to these instructions during trial and thus his claims of instructional error are not preserved.

Rule 70.03 provides that "[c]ounsel shall make specific objections to instructions considered erroneous" and "[n]o party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection." Lopez's counsel did not object on the record during the instructions conference to the giving of the verdict directors, a fact which Lopez concedes on appeal. Although during the conference Lopez's counsel objected to the giving of other instructions, when the trial court stated its intention to refuse both Lopez's and Cedar Fair's offered verdict directors, counsel did not make any argument or objection. As such, Lopez failed to preserve any challenge to the verdict directors on appeal. *See Howard v. City of Kan. City*, 332 S.W.3d 772, 790 (Mo. banc 2011) (the City failed to preserve its claim of instructional error where there was "no record of the City making an objection to Instruction No. 6 at trial"— although, notably, the City did object to other instructions and provided grounds for those

19

objections—and while "the City could have raised an issue regarding the trial court's failure to give [the City's offered version] of the instruction," it "did not do this either"); *see also Hanks v. Morris*, 432 S.W.3d 293, 302-03 (Mo. App. W.D. 2014) (claim of instructional error was not preserved where the appellant did not object on the record and there was "nothing in the record to indicate that [the appellant] was prevented from objecting").

"This Court retains discretion to review unpreserved arguments for plain error." *Denney v. Syberg's Westport, Inc.*, 665 S.W.3d 348, 355 (Mo. App. E.D. 2023) (citing Rule 84.13(c)). "However, plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Id.* (internal marks omitted). For these reasons, we decline to review Lopez's unpreserved claims of instructional error. *See id.* (declining to engage in plain error review of the appellant's unpreserved claim of instructional error).

Points VI, VII, VIII, and IX are denied.

### Points X and XI – Punitive Damages

Lopez's tenth and eleventh points relate to punitive damages. In his tenth point, Lopez asserts he "made a submissible case" for punitive damages, and thus the trial court erred in granting a directed verdict in favor of Cedar Fair on this issue. In his eleventh point, he asserts the "trial court erred in excluding evidence related to [Cedar Fair's] employees' lack of MHRA training because the evidence was relevant to the issue of [Cedar Fair's] liability for punitive damages." However, we find both points fail for lack of prejudice.

20

We review the trial court's granting of a directed verdict for prejudice, not mere error. *See Johnson v. City of St. Louis*, 613 S.W.3d 435, 445 (Mo. App. E.D. 2020) ("[W]e will affirm [a trial court's grant of directed verdict] if it is clear that the directed verdict did not prejudice the plaintiff."); *Mirth v. Reg'l Bldg. Inspection Co.*, 93 S.W.3d 787, 789 (Mo. App. E.D. 2002) ("We will only reverse an erroneously granted directed verdict and remand for a new trial if the error is prejudicial."). Here, we need not determine if the trial court erred in granting a directed verdict because, even if it did, Lopez suffered no prejudice. "To recover punitive damages, a plaintiff must prevail on an underlying claim entitling her to actual damages." *Campbell v. Union Pac. R.R. Co.*, 616 S.W.3d 451, 474 (Mo. App. W.D. 2020). "If the underlying claim fails, then the plaintiff cannot recover punitive damages." *Id.* Lopez did not prevail on his underlying claim entitling him to actual damages: the jury returned a verdict in favor of Cedar Fair and Lopez has not established in this appeal any basis to reverse the judgment. Accordingly, because Lopez could not recover punitive damages, he was not prejudiced from the trial court's directed verdict.

Similarly, we find no prejudice resulted from the exclusion of evidence Lopez asserts was relevant to his punitive damages claim. Because the jury never awarded actual damages, "it could not have considered punitive damages," and "[w]hen the jury's verdict demonstrates that it never reached the issue which is claimed to be the source of prejudice then no prejudice has been demonstrated." *Ziolkowski v. Heartland Reg'l Med. Ctr.*, 317 S.W.3d 212, 220 (Mo. App. W.D. 2010) (finding the appellant could not establish prejudice resulting from the trial court's exclusion of evidence related to punitive damages where the jury found against the appellant in her underlying claim).

21

Accordingly, Points X and XI are denied.

## Conclusion

For the reasons stated above, the judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

22